# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SENTINEL MANAGEMENT GROUP, INC., | ) | Case No. 07 B 14987 |
| | ) | |
| Debtor. | ) | Hon. John H. Squires |

**FINAL APPLICATION OF JENNER & BLOCK LLP, AS COUNSEL FOR THE TRUSTEE,
FOR PAYMENT OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD FROM AUGUST 28, 2007 THROUGH DECEMBER 17, 2008**

Jenner & Block LLP ("Jenner"), counsel to Frederick J. Grede, the chapter 11 trustee (the "Trustee") for the estate of Sentinel Management Group, Inc. (the "Debtor" or "Sentinel"),[1] hereby submits, pursuant to 11 U.S.C. § 330, the Order Granting Trustee's Application To Employ Jenner & Block LLP as Counsel (the "Jenner Retention Order"), the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals, the Trustee and Committee Members entered by this Court on November 8, 2007 (the "Administrative Order") and the Stipulation and Consent Order Regarding Adequate Protection of Customer Interests entered by this Court on January 10, 2008 (the "Customer Adequate Protection Stipulation"), this final application (the "Final Application") for (a) allowance and payment of compensation in the amount of $14,044,347.66 for the actual, reasonable and necessary legal services rendered to the Trustee for the period from August 28, 2007 through December 17, 2008 (this "Final Compensation Period"), and (b) reimbursement in the amount of $413,501.00 of the actual, reasonable and necessary expenses incurred during the Final

---

[1] As of December 17, 2008, the effective date of the Plan (defined herein), Mr. Grede ceased being the Trustee and is now the Liquidation Trustee of the Sentinel Liquidation Trust. Jenner continues to represent Mr. Grede in that capacity.

Compensation Period.  In further support of this Final Application, Jenner respectfully states as follows:

INTRODUCTION

1.      This Court has jurisdiction over this Final Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested herein is section 330 of Title 11 of the United States Code (11 U.S.C. §§ 101-1532, the "Bankruptcy Code"), as supplemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice, dated January 30, 1996 (the "UST Guidelines"), the Administrative Order and the Customer Adequate Protection Stipulation (collectively, the "Guidelines").

I.      SUMMARY OF SENTINEL'S CASE

3.      Sentinel is an Illinois corporation, headquartered prior to the bankruptcy in Northbrook, Illinois.  Sentinel is registered with the Securities and Exchange Commission ("SEC") as an investment adviser ("Investment Adviser"), and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant ("FCM").  It is also a member of the National Futures Association ("NFA"), which is Sentinel's designated self-regulatory organization.

4.      Sentinel managed investments of cash for various clients, including other FCMs, hedge funds, financial institutions, pension funds, and individuals.   As of July 31, 2007, Sentinel claimed to have $1.5 billion in client assets under management.

2

5.      Sentinel divided its customers into four groups, and under applicable law was supposed to strictly segregate the investments of these four customer groups from each other, and from Sentinel's own funds.

6.      On August 13, 2007, Sentinel sent a letter to its customers representing that it could no longer honor redemptions due to a liquidity crisis.

7.      On August 16, 2007 Sentinel entered into an agreement to sell to Citadel Equity Fund, Ltd. and Citadel Limited Partnership the bulk of the securities purportedly associated with "SEG 1" (FCM) customer accounts.

8.      On August 16 and 17, 2007, several customers sued Sentinel and sought and obtained temporary restraining orders prohibiting transfers of securities purportedly segregated for their benefit. On the afternoon of August 17, the NFA issued a Member Responsibility Action prohibiting Sentinel from selling, transferring, encumbering or otherwise disposing of certain assets.

9.      On the evening August 17, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

10.     On August 20, 2007, the Debtor distributed what was purported to be the proceeds of the Citadel sales transaction to SEG 1 customers.  Soon thereafter, the Debtor consented to the appointment of a chapter 11 trustee.

11.     Pursuant to Orders of this Court dated August 23 and 29, 2007, on August 28, 2007, the Trustee was appointed as the chapter 11 trustee of the Debtor by the United States Trustee.  He has accepted his appointment, and is acting, duly qualified, as Trustee of the Debtor.

12.     Following his appointment, the Trustee conducted an extensive investigation into Sentinel's business operations.  As a result of that investigation, the Trustee determined (among other things) that certain Sentinel insiders failed to observe requirements that customer funds and securities

be segregated.  Instead, certain insiders used hundreds of millions of dollars in securities that were supposed to be segregated as collateral for loans used to support trading that generated millions of dollars of profit for their benefit, and to finance the control of more than $3.0 billion in securities using leveraged repurchase agreement transactions.

13.    The Fourth Amended Chapter 11 Plan of Liquidation (the "Plan") was confirmed by this Court on December 15, 2008 and became effective on December 17, 2008.  The Trustee, in his capacity as the Liquidation Trustee of the Sentinel Liquidation Trust, is now making interim distributions, pursuing litigation, and undertaking certain other matters described below.

## II.    PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

14.    On September 11, 2007, the Court entered the Jenner Retention Order, authorizing the Trustee to retain Jenner as his counsel, *nunc pro tunc* to August 28, 2007.

15.    On November 8, 2007, the Court entered the Administrative Order.  Pursuant to the Administrative Order, the Court established a procedure for interim compensation and reimbursement of expenses for professionals appointed in this case.

16.    On January 10, 2008, the Court entered the Customer Adequate Protection Stipulation, pursuant to which customers of the Debtor are granted adequate protection, if applicable and as set forth in the Customer Adequate Protection Stipulation, pursuant to section 361 and 363(e), for the use of property to make payments to professionals in accordance with the Administrative Order.

17.    Prior to this Final Application, Jenner submitted its First through Third Interim Applications and a supplement to its First Interim Application:

a.    On January 30, 2008, Jenner filed the First Interim Fee Application of Jenner & Block LLP, as Counsel for the Trustee, for Payment of Interim Compensation for

Services Rendered and for Reimbursement of Expenses Incurred for the Period from August 28, 2007 Through December 31, 2007" (the "First Interim Application"), requesting compensation for professional services performed by Jenner in the aggregate amount of $3,146,267.00 and for reimbursement of expenses in the aggregate amount of $62,965.93. In an Order dated March 4, 2008, this Court awarded fees in the amount of $3,041,726.51 and expenses in the amount of $31,232.81, and provisionally disallowed the remaining fees and expenses requested in the First Interim Application.

b.      On March 28, 2008, Jenner filed its Supplement to the First Interim Application (the "Supplement to First Interim Application"), requesting the Court reconsider compensation for professional services performed by Jenner in the amount of $58,782.50 and reimbursement of expenses in the amount of $30,169.08. In an Order dated April 15, 2008, this Court awarded the fees in the amount of $58,782.50 and expenses in the amount of $30,169.08.

c.      On May 30, 2008, Jenner filed the Second Interim Fee Application of Jenner & Block LLP, as Counsel for the Trustee, for Payment of Interim Compensation for Services Rendered and for Reimbursement of Expenses Incurred for the Period from January 1, 2008 Through April 30, 2008" (the "Second Interim Application"), requesting compensation for professional services performed by Jenner in the aggregate amount of $3,533,791.50 and for reimbursement of expenses in the aggregate amount of $107,615.32. In an Order dated June 30, 2008, this Court awarded fees in the amount of $3,466,669.65, provisionally disallowing the remaining fees, and expenses in the amount of $104,632.21 with respect to the Second Interim Application.

d.      On September 30, 2008, Jenner filed the Third Interim Fee Application of Jenner & Block LLP, as Counsel for the Trustee, for Payment of Interim Compensation for

Services Rendered and for Reimbursement of Expenses Incurred for the Period from May 1, 2008 Through August 31, 2008 (the "Third Interim Application"), requesting compensation for professional services performed by Jenner in the aggregate amount of $4,152,712.50 and for reimbursement of expenses in the aggregate amount of $135,402.52.   In an Order dated November 6, 2008, this Court awarded fees in the amount of $4,108,389.50 and expenses in the amount of $133,626.64, and provisionally disallowed the remaining fees and expenses requested in the Third Interim Application.

18.    The following chart summarizes Jenner's requests for interim compensation and those fees and expenses that have been awarded to date by the Court:

| Application | Period | Fees Requested | Fees Awarded | Expenses Requested | Expenses Awarded |
|---|---|---|---|---|---|
| First Interim Application | 8/28/2007 - 12/31/2007 | $3,146,267.00 | $3,041,726.51 | $62,965.93 | $31,232.81 |
| Supplement to First Interim Application | 8/28/2007 - 12/31/2007 | Included in above | $58,782.50 | Included in above | $30,169.08 |
| Second Interim Application | 1/1/2008 - 4/30/208 | $3,533,791.50 | $3,466,669.65 | $107,615.32 | $104,632.21 |
| Third Interim Application | 5/1/2008 - 8/31/2008 | $4,152,712.50 | $4,108,389.50 | $135,402.52 | $133,626.64 |
| TOTALS | | | $10,675,568.16 | | $299,660.74 |

19.    The following chart[2] summarizes the invoices that have been noticed in accordance with the Administrative Order by Jenner since the last interim application:

---

[2] The totals in this chart include fees and expenses that Jenner has voluntarily reduced and for which it is not seeking compensation or reimbursement, as is more fully described in this Final Application.

| Period | Fees Invoiced | Expenses Invoices |
|---|---|---|
| September 1-30, 2008 | $962,301.00 | $33,208.01 |
| October 1-31,2008 | $1,064,537.00 | $52,937.25 |
| November 1-30, 2008 | $828,113.50 | $19,293.17 |
| December 1-17, 2008 | $537,310.50 | $12,457.46 |
| Totals | $3,392,262.00 | $117,895.89 |

20.     In accordance with the Guidelines, Jenner seeks final allowance and payment herein of (a) compensation in the amount of $3,368,779.50 for the actual, reasonable and necessary legal services rendered to the Trustee and reimbursement of $113,840.26 for the actual, reasonable and necessary expenses incurred for the period from September 1, 2008 through December 17, 2008 (this "Current Compensation Period"), and (b) total compensation in the amount of $14,044,347.66 for the actual, reasonable and necessary legal services rendered to the Trustee and reimbursement of $413,501.00 for the actual, reasonable and necessary expenses incurred during the Final Compensation Period.

21.     Pursuant to the Administrative Order, as of the date of this Final Application the Trustee has paid Jenner $12,959,529.36 for professional services rendered to the Trustee during the Final Compensation Period and $405,099.17 for expenses incurred by Jenner during the Final Compensation Period, for total payments of $13,364,628.53. Pursuant to the Administrative Order, Jenner anticipates receipt of payments for fees and expenses by the time of the hearing on this Final Application in the amount of $429,848.40 for professional services and $12,457.46 for expenses incurred. Jenner anticipates that the remaining $676,072.10, which represents twenty percent of Jenner's fees for professional services rendered during the Current Compensation Period, will be held

back by the Trustee pursuant to the Administrative Order pending the Court's order on this Final Application.

22.     The fees sought by this Final Application reflect an aggregate of 35,680.5 hours of attorney and paraprofessional time spent and recorded in performing services for the Trustee during the Final Compensation Period.  This fee request does not include time that might be construed as duplicative or otherwise not beneficial to the Trustee or the Debtor's estate, which has already been eliminated by Jenner.[3]  Of the aggregate time expended, 8,407.3 recorded hours were expended by partners, 18,128.1 recorded hours were expended by counsel and associates, and 9,145.1 recorded hours were expended by paralegals and project assistants.

23.     During the Final Compensation Period, Jenner's hourly billing rates for attorneys working on these matters ranged from $275.00 to $750.00 per hour.[4]  Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $465.72.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount of fees requested is fair and reasonable given:  (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

24.     Attached hereto as Exhibit A is a schedule setting forth all Jenner professionals and paraprofessionals who have performed services in this chapter 11 case during the Final Compensation

---

[3]  A total of $77,033.49 in fees and expenses have been eliminated by Jenner during the Final Compensation Period, for a total of which Jenner does not seek payment.

[4]  Hourly rates for certain Jenner partners, associates, paralegals and projects assistants were adjusted as of January 1, 2008.  Throughout this Final Application and the exhibits and attachments, the fee adjustments and the hours subject to the fee adjustments have been clearly delineated.

Period, the capacities in which each such individual is employed by Jenner, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefor, the year in which each professional was first licensed to practice law and the year in which each professional graduated from law school.

25.    Attached hereto as <u>Exhibit B</u> is a summary by project categories of the fees generated by the services performed during the Final Compensation Period and, for each separate project category, a list of each person providing services on the project, a statement of the number of hours spent and the amount of compensation requested for each person on the project.

26.    Jenner maintains computerized records of the time spent by all attorneys and paraprofessionals and the expenses incurred in connection with the representation of the Trustee in the Debtor's chapter 11 case. Subject to redaction for the attorney-client privilege where necessary, copies of these computerized records will be furnished to the Court and, pursuant to the Administrative Order, have previously been furnished together with the firm's monthly fee statements to the Trustee, counsel to the Official Committee of Unsecured Creditors of the Debtor (the "<u>Committee</u>"), and the U.S. Trustee.

27.    The fees charged by Jenner in this case are billed in accordance with its existing billing rates and procedures in effect during the Final Compensation Period. The rates Jenner charges for the services rendered by its professionals and paraprofessionals in this chapter 11 case are the rates charged by the firm for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

28.     All of the services for which compensation is sought were rendered to the Trustee solely in connection with this case, in furtherance of the duties and functions of the Trustee and not on behalf of any individual creditor or other person.

29.     Jenner has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in this case.

30.     Jenner has not shared, or agreed to share, (a) any compensation it has received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by Jenner or any member thereof as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

31.     The Trustee has reviewed and approved Jenner's monthly fee statements prior to the filing of this Final Application.

32.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Final Compensation Period, but were not processed prior to the preparation of this Final Application, Jenner reserves the right to request additional compensation for such services and reimbursement of such expenses.

33.     To aid this Court in analyzing the Final Application, Jenner has divided it into four parts.  Parts I and II of the Final Application provide a brief background of the Debtor's case and an overview of this Final Application.  Part III provides a description of the work performed by Jenner, by category, as well as how Jenner calculated this compensation request.  Finally, Part IV explains why this compensation request should be allowed.

III.   SUMMARY OF SERVICES PROVIDED AND EXPENSES INCURRED

34.    The Fourth Amended Chapter 11 Plan of Liquidation for Sentinel Management Group, Inc. (the "Plan") has been confirmed. The Effective Date of the Plan was December 17, 2008 and the Liquidation Trustee has commenced making initial distributions and is carrying out his duties, including pursuing the below-described litigation, as the Liquidation Trustee of the Sentinel Liquidation Trust.

35.    During the Final Compensation Period, Jenner performed a wide variety of tasks on the Trustee's behalf in connection with his administration of the Debtor's case. The Debtor's case involves more than a billion dollars in liabilities, and is unique in several respects. The scant precedent available concerning this unusual FCM case, the significant fraud perpetrated by certain Sentinel insiders, and the few remaining employees have resulted in significant challenges in the administration of the Debtor's estate, and this case has raised several complicated legal issues of first impression.

36.    Additionally, as the Court is aware, the Debtor's bankruptcy case is large and complex, and involves not only numerous significant adversary proceedings that already have been filed but also several other potential adversary proceedings or lawsuits that are likely to be filed in the future. Jenner has spent a significant amount of time investigating facts underlying the estate's potential causes of action. Given the complexity and size of each of the matters, it would be impossible for a single attorney to manage the bankruptcy case, the investigations and each pending and contemplated adversary proceeding or contested matter. Accordingly, Jenner has assigned certain partners to manage the teams of attorneys working on the various matters. Ms. Steege and Mr. Lazar are primarily responsible for managing the bankruptcy aspects of this case; Mr. Gair and Mr. Kinney are primarily responsible for managing the investigation,

11

document review, discovery and other matters relating to the adversary proceeding against Sentinel's insiders, the adversary proceeding against the Bank of New York and certain securities claims; and Mr. McCall is primarily responsible for managing the investigation, document review, discovery and other matters relating to the adversary proceeding against McGladrey & Pullen LLP, as well as securities matters, and certain other potential causes of action against various other parties.

37.    Since the filing of the First, Second and Third Interim Applications and the Supplement to First Interim Application (together, the "Prior Interim Applications"), this Court has entered, on December 15, 2008, an Order confirming the Plan.  Because the Prior Interim Applications contain lengthy descriptions of matters handled during those time periods, this Final Application does not repeat all of that detail.  The following descriptions of matters therefore pertain solely to matters handled during the Current Compensation Period.

38.    To provide an orderly summary of the services rendered to the Trustee by Jenner and in accordance with Guidelines, Jenner has established numerous billing categories in connection with this case.  The following summary is intended to highlight the services rendered in each separate billing category and is not intended to be a comprehensive detailed description of the work performed.  Detailed descriptions of the day-to-day services provided and the time expended performing such services in each project billing category are attached as Group Exhibit E[5] hereto and show that Jenner has been heavily involved in the performance of services for the Trustee on a daily basis, including night and weekend work, often under pressure to meet deadlines.  A list by project billing category of each person providing services on the project, a

---

[5] Jenner has attached invoices related to the Current Compensation Period only since invoices for the other periods in the Final Compensation Period were included in the Prior Interim Applications.  Jenner will provide copies of the invoices from the Prior Interim Applications upon request.

statement of the number of hours spent and the amount of compensation requested for each person on the project are annexed in Exhibit B.

39.    The expenses that Jenner incurred during the Current Compensation Period are further explained in paragraphs 40 through 43 below.  The primary professional services that Jenner rendered during the Current Compensation Period are described in Paragraphs 44 through 112 below.

(1)    Expenses

40.    Attached hereto as Exhibit C is a schedule specifying the categories of expenses for which Jenner is seeking reimbursement and the total amount for each such expense category; Group Exhibit D contains a detailed list of all expenses for which Jenner seeks reimbursement.  The transportation expenses relate to travel by Jenner attorneys by taxi, train or their own vehicle within the city for meetings, court hearings and interviews.  There also are out-of-town travel and meal expenses for numerous attorneys who traveled to New York for depositions.[6]  Copies of receipts related to out-of-town travel are attached hereto as Group Exhibit H.  The photocopy expenses relate to scanning and bate-stamping documents to be produced by or produced to the Trustee and copying or printing documents for production or use at depositions or interviews.

41.    With respect to research performed utilizing Lexis or Westlaw, attached as Group Exhibit F  are copies of Lexis Usage Data reports and Group Exhibit G are Westlaw invoices, which provide a detailed list of persons conducting research and the dates such research was conducted utilizing Lexis or Westlaw.  Jenner has further annotated those to provide additional detail concerning the topics that were the subject of research.  Specifically, Jenner attorneys and paraprofessionals researched issues related to potential causes of action and defenses, damages, in pari delicto, discovery, protective orders, the appealability of orders, claims against brokers,

---

[6] Jenner has voluntarily reduced travel and meal expenses by $4,055.63 where more than one attorney traveled out-of-town for a deposition.

consent decrees and default judgments, the BONY reserve, the duty to investigate, expert witnesses, motions to stay, objections to claims and stay of objections, standing, pension plan termination, plan confirmation, property of the estate, post-petition transfers, rule 60(b), TARP and trial by jury.

42.     The schedules in <u>Group Exhibit D</u> have been adjusted for and do not reflect and/or have been redacted to reflect certain expenses incurred by Jenner for which it is not seeking reimbursement.

43.     Jenner seeks allowance and payment of $117,895.89 for expenses incurred during the Current Compensation Period.

(2)     <u>Government Investigations/Enforcement (10027)</u>

44.     The SEC, CFTC and the United States Department of Justice (the "<u>DOJ</u>") (collectively, the "<u>Government Agencies</u>") are each conducting separate investigations related to the Debtor's business.  Jenner is assisting the Trustee in responding to numerous information and document requests related to the investigations by the Government Agencies.  In that regard, Jenner attorneys have corresponded and participated in meetings with the Government Agencies and have continued to compile and coordinate the production of documents in response to their requests and inquiries.  Jenner attorneys also completed reports required under applicable law and conducted legal research regarding the federal and state rules and regulations applicable to Debtor.

45.     Additionally, the SEC has filed litigation against the Debtor, in an action styled *United States Securities and Exchange Commission v. Sentinel Management Group, Inc.*, Case No. 07-cv-04684, in the United States District Court for the Northern District of Illinois (the "<u>SEC Litigation</u>").  In the SEC Litigation, the SEC seeks orders of preliminary and permanent injunction, disgorgement, and civil fines and penalties for Sentinel's violations of various provisions of the Investment Advisers Act

of 1940 (the "<u>Advisers Act</u>") and other federal securities laws, rules and regulations. Jenner is representing the estate's interests in connection with the SEC Litigation. In that regard, Jenner attorneys corresponded and participated in meetings with the SEC, appeared and attended hearings in the SEC Litigation, and compiled and produced documents in response to the SEC's numerous requests. During the Current Compensation Period, Jenner successfully negotiated, and this Court authorized, a resolution of the SEC Litigation by entry of a consent judgment against the Debtor that permanently restrains and enjoins Sentinel from violating the Securities Act, the Securities Exchange Act, and the Investment Advisors Act.

46.    Further, the CFTC has filed litigation against the Debtor and certain of its insiders in an action styled *Commodity Futures Trading Commission v. Sentinel Management Group, Inc., et al.*, Case No. 08-cv-02410, in the United States District Court for the Northern District of Illinois (the "<u>CFTC Litigation</u>"). In the CFTC Litigation, the CFTC alleges that the Debtor and its insiders violated various provisions of the Commodity Exchange Act (the "<u>CEA</u>") and various CFTC Regulations. In its request for relief, the CFTC seeks injunctive relief and restitution to every customer whose funds were lost as a result of the statutory and regulatory violations. Jenner is representing the estate's interests in connection with the CFTC Litigation. In that regard, during the Current Compensation Period, Jenner attorneys corresponded and participated in meetings with the CFTC, appeared and attended hearings related to the CFTC Litigation, reviewed an answer filed by Charles Mosley and compiled and produced documents in response to the CFTC's numerous requests.

47.    During the Current Compensation Period, Jenner expended 81.7 hours, at an aggregate charge of $44,994.50, relating to government investigations and enforcement.

(3)    Creditor Communications (10035)

48.    The time descriptions in this category relate to communications and correspondence with creditors and customers of the Debtor.  Specifically, Jenner corresponded with creditors, provided information related to the plan and proposed distributions, and provided general case information to and responded to specific requests from creditors.

49.    Jenner expended 5.1 hours, at an aggregate charge of $3,094.00, relating to creditor communications during the Current Compensation Period.

(4)    Plan Negotiations And Issues (10043)

50.    During the Current Compensation Period, Jenner finalized post-hearing briefing and proposed findings of fact and conclusions of law relating to confirmation of the plan of liquidation proposed by the Trustee and co-sponsored with the Committee.

51.    An issue in contested confirmation of the plan involved the setting of a reserve for the disputed claim of the Bank of New York ("BONY").  During the Current Compensation Period, Jenner finalized briefing related to the dispute and, ultimately, negotiated a reserve amount with BONY.  Jenner attorneys also drafted a 9019 motion seeking, and obtained, approval of that settlement, which resolved one of the major objections to confirmation of the Plan.

52.    On December 8, 2008, this Court entered its Memorandum Opinion following the two-day contested confirmation hearing.  In accordance with that opinion, Jenner attorneys revised the plan, prepared a conforming confirmation order and revised the liquidation trust agreement.  This Court entered its order confirming the Plan on December 15, 2008.  Jenner attorneys revised, finalized and served a notice of entry of confirmation order and notice of effective date, and drafted a letter of direction to have the funds at the Bank of New York released to the Trustee.

53.     During the Current Compensation Period, Jenner expended 119.3 hours, at an aggregate charge of $67,004.00, relating to confirmation issues.

(5)    Tax Issues (10051)

54.     The time descriptions in this category relate to the time spent analyzing various tax issues in connection with the administration of the Debtor's chapter 11 case and advising the Trustee regarding tax filings, forms and payments.   Specifically, Jenner consulted with the Trustee, Navigant and Alan D. Lasko and Associates regarding tax and corporate issues and preparation and review of the Debtor's tax returns.   Jenner attorneys also researched law and analyzed tax laws relative to issues facing the Debtor and Trustee.

55.     During the Current Compensation Period, Jenner expended 104.1 hours, at an aggregate charge of $44,167.00, on matters relating to tax issues.

(6)    Subpoenas and Information Requests (10060)

56.     During the Current Compensation Period, Jenner expended 10.7 hours, at an aggregate charge of $2,442.50, on subpoenas and information requests not specifically related to other pending litigation.

(7)    Routine Chapter 11 Matters (10078)

57.     During the Current Compensation Period, Jenner assisted the Trustee in various routine chapter 11 tasks, including *inter alia*, preparation of routine motions, responses to motions filed in the case, attending hearings, monitoring the case docket and related case dockets, and various other chapter 11 issues.   The time descriptions in this category reflect Jenner's attention to these routine chapter 11 matters, including, specifically, reviewing monthly operating reports and issues related to the Trustee's bond.   The time entries in this category also

17

include matters relating to the preparation of interim trustee reports and communications with the U.S. Trustee's office.

58.     During the Current Compensation Period, Jenner expended 134.3, at an aggregate charge of $35,100.00, on routine chapter 11 matters on behalf of the Trustee.

(8)     <u>Travel Time (10086)</u>

59.     The time entries in this category relate to time spent by Jenner attorneys traveling out of town to and from depositions of Michael Scarry, Denise Starks, Evan Fraser, Vincent Prestia, Mark Aprahamian, John Vricella, Jennifer Hunt, Mike Burns, Lucia Ferrara and Stephen Brennan in the Bank of New York litigation, during which time they were not actively working on other billable matters.  During the Current Compensation Period, Jenner attorneys expended 47.0 hours, at an aggregate charge of $23,162.00 on travel time.  Jenner is seeking compensation only for <u>one</u>-<u>half</u> of their travel time, or $11,581.00.[7]  Jenner is voluntarily reducing its bill for the balance.

(9)     <u>Fee/Employment Application (10108)</u>

60.     During the Current Compensation Period, Jenner expended 158.1 hours, at an aggregate charge of $57,823.50, preparing documents related to interim and supplemental requests for compensation and expenses and related matters.  Specifically, Jenner prepared its monthly invoices and routinely updated its retention affidavit under Bankruptcy Rule 2014.  In addition to preparing its Third Interim Application, Jenner assisted in preparing and filing the applications for Navigant Consulting, Inc. ("<u>Navigant</u>"), Macquarie Securities (USA), Inc. ("<u>Macquarie</u>") and Alan D. Lasko & Associates, PC, and attended hearings on these applications.  Further, on a monthly

---

[7] Jenner also has voluntarily reduced 19.0 hours and $6,650.00 in fees in October for time recorded by attorneys where more than one attorney traveled for a deposition.

basis, Jenner reviewed the invoices of Macquarie, Navigant and the Trustee and assisted in the redaction of such invoices.

61.     The total amount of compensation sought under this category for time related to Jenner's applications (excluding the applications for other professionals) is equal to 1.5% of the aggregate compensation sought in the Current Compensation Period, and, therefore, is well below the 3% guideline often used by courts to determine the reasonableness of requests for compensation related to fee applications.

(10)    Claims Administration and Objections (10116)

62.     During the Current Compensation Period, Jenner expended 273.8 hours, at an aggregate charge of $110,869.00, relating to, inter alia, analysis and objections to proofs of claim filed against the Debtor's estate.

63.     Jenner continued to engage in discussions and informal discovery and attended status hearings regarding the Trustee's first omnibus objection to duplicate and amened/superceded claims, as well as corresponded and negotiated with other creditors about resolutions and possible withdrawals of claims.

64.     Jenner also reviewed the numerous claim objections filed by the Ad Hoc Committee of Seg 1 Customers, and researched and drafted a motion to dismiss in response thereto, as well as a researched and drafted a reply in response to the objection to the motion to dismiss.  The Court granted the Trustee's motion, paving the way for interim distributions under the plan.

65.     Finally, in preparation for an initial distribution to creditors, Jenner worked with the Trustee and Navigant to establish reserves for disputed claims and to review claims for

preparation of a distribution model. Jenner also continued its claims review process and corresponded with numerous creditors regarding their claims and potential distribution issues.

(11)   Business Operation Advice (10132)

66.     During the Current Compensation Period, Jenner expended 8.1 hours, at an aggregate charge of $4,176.00, providing assistance and advice to the Trustee concerning the wind-down of the Debtor's business, including, *inter alia*, issues relating to the Debtor's balance sheet, bank accounts and insurance.

(12)   Asset Analysis and Recovery (10140)

67.     This category contains time descriptions relating to the analysis and recovery of assets of the Debtor. Specifically, during the Current Compensation Period Jenner expended 7.1 hours, at an aggregate charge of $4,130.00, analyzing securities lawsuits to determine whether Sentinel's interests could be included, reviewing Treasury Department reports to determine eligibility for TARP debt buy-back, and working with Macquarie to prepare a report of securities sold by the Trustee.

(13)   Case Coordination (10167)

68.     Numerous professionals at several professional firms are advising and representing the Trustee in this case. In an effort to minimize the duplication of efforts among these individuals, Jenner attorneys have spent time coordinating the administration of the Debtor's estate, including participation in meetings and telephone conferences with the Trustee, the Trustee's other professionals, Jenner attorneys, and various interested parties and their representatives. Among other things, Jenner prepared case calendars, circulated pleadings, and prepared task lists in order to minimize any duplication of effort. These conferences and other tasks have been minimal, but are necessary for the efficient administration of this case.

69.    Jenner expended 86.4 hours, at an aggregate charge of $26,606.50, on matters relating to the coordination of the administration of the Debtor's estate during the Current Compensation Period.

(14)    Repurchase Transaction Matters (10175)

70.    Prior to the Petition Date, Debtor entered into repurchase ("repo") transactions with several entities (the "repo counterparties"). Certain Sentinel insiders caused Sentinel to control an increasing number of securities pursuant to repo transactions, which resulted in a high degree of leverage and subjected Sentinel's business to substantial risk. In fact, when the market crisis began in 2007, Sentinel lacked the liquidity resources to further collateralize the repo positions and the repo counterparties began liquidating the repo securities. The liquidation of repo securities resulted in the elimination of virtually all of Sentinel's equity in repo positions, caused several hundred million dollars in losses to Sentinel, exacerbated Sentinel's liquidity crisis and contributed to its inability to meet customer redemption requests.

71.    During the Current Compensation Period, the Trustee investigated the nature and structure of these transactions and the liquidation of the repo securities by the repo counterparties. Jenner assisted the Trustee in his investigation by continuing to negotiate confidentiality agreements with the repo counterparties so that documents and information could be exchanged, issuing document requests to and reviewing responses from the repo counterparties, communicating and corresponding with the repo counterparties, and conducting legal research relating to the repo and reverse repo transactions. Jenner attorneys also continued their extensive electronic review of Bloomberg emails and review of telephone calls. Further, Jenner drafted a response to the motion of Cantor Fitzgerald & Co. ("Cantor") seeking a determination of its right to recover expenses from escrowed funds and for

disbursement of funds and a motion for the return of wrongfully withheld excess liquidation proceeds

from Cantor, which the parties ultimately settled.

72.      Jenner attorneys also continued to assist the Trustee in an investigation into the manner

in which securities were sold to the Debtor, as well as the manner in which certain Sentinel insiders

acquired securities.   This has involved a significant amount of time conducting the investigation,

performing legal research, requesting, reviewing and analyzing documents and interviewing witnesses.

Additionally, during the Current Compensation Period, numerous Jenner attorneys spent time

researching and analyzing potential claims and defenses.   Two lawsuits have been filed in the

District Court against brokers that sold securities to Sentinel, and time related to these matters is

now being separately recorded and these matters are discussed below.

73.      Jenner expended 408.3 hours, at an aggregate charge of $156,776.00, on matters

relating to the repurchase transaction and securities sale matters during the Current

Compensation Period.

(15)   <u>Bank Of New York (10183)</u>

74.      Prior to the Petition Date, the Bank of New York ("<u>BONY</u>") made loans,

extensions of credit and other financial accommodations to the Debtor (the "<u>BONY Loans</u>") that

BONY asserts were made pursuant to certain loan documents (the "<u>BONY Loan Documents</u>").

BONY asserts that pursuant to the BONY Loan Documents, the Debtor (i) appointed BONY as

clearing agent for all securities and cash at any time delivered to BONY during the term of the

agreement, and (ii) pledged and granted to BONY a continuing lien and security interest in all

personal property and fixtures of the Debtor, including without limitation, any and all securities

and other property held in the accounts maintained by the Debtor at BONY and any cash

balances held in any cash account maintained by the Debtor at BONY in connection therewith and any other property in the possession or control of BONY (the "BONY Collateral").

75.    On March 3, 2008, the Trustee filed an adversary complaint against BONY for the avoidance and recovery of fraudulent and preferential transfers, equitable subordination of claims, transfer of subordinated lien, disallowance of claim, determination of the validity and extent of lien, turnover of property, and aiding and abetting/knowing participation in the breach of fiduciary duties by the Insiders (as defined below) (the "BONY Adversary").  On June 20, 2008, the District Court withdrew the reference to this Court of the BONY Adversary.  The case now is pending before Judge Zagel.

76.    During the Current Compensation Period, Jenner attorneys continued to participate extensively in discovery and review numerous documents and emails produced by BONY and other third parties.  Jenner also responded to discovery requests from BONY and prepared discovery requests and subpoenas to BONY and third parties.  In addition, Jenner attorneys reviewed objections to discovery from BONY and third parties, drafted a motion to compel discovery from BONY, negotiated a protective order and stipulation to resolve discovery issues with BONY, and conducted meet and confers regarding discovery issues with BONY and third parties.  Finally, Jenner interviewed witnesses, prepared for depositions and took the depositions of Michael Scarry, Denise Starks, Evan Fraser, Vincent Prestia, Mark Aprahamian, John Vricella, Jennifer Hunt, Mike Burns, Lucia Ferrara and Stephen Brennan.

77.    Currently, Judge Zagel has taken BONY's motion to dismiss under advisement and the parties are awaiting a ruling.  The parties are continuing to engage in document and deposition discovery.

78.    During the Current Compensation Period, Jenner expended 3,334.6 hours, at an aggregate charge of $1,131,638.50,[8] on issues involving BONY and the BONY Adversary.

(16)    <u>Citadel Sale (10191)</u>

79.    One day before the Petition Date, Citadel Equity Fund, Ltd., Citadel Limited Partnership, and Citadel Investment Group, L.L.C., (collectively referred to herein as "<u>Citadel</u>") purchased what was purported to be the Debtor's SEG 1 portfolio at which the Trustee believes to be a substantial discount from market value.    Most of the proceeds of the sale, less a reserve, were distributed to the Debtor's SEG 1 customers after the Petition Date.    During the Current Compensation Period, the Trustee continued his investigation of the sale of the portfolio to Citadel and in that regard, Jenner continued to review documents requested from and produced by Citadel and conducted legal research related to the pre-petition transfer to Citadel.

80.    On December 4, 2008, the Trustee filed an adversary complaint against Citadel for avoidance and recovery of fraudulent transfers of Sentinel securities to Citadel on the eve of Sentinel's bankruptcy and for reformation and breach of contract, as well as against Goldman Sachs & Co. ("<u>Goldman</u>"), which is the immediate transferee of the securities from Citadel and agreed to split the profits from subsequent securities sales with Citadel (the "<u>Citadel Adversary</u>").    The Citadel Adversary is now pending before this Court, but Citadel and Goldman have filed a joint motion to withdraw the reference to this Court of the Citadel Adversary.

81.    During the Current Compensation Period, Jenner expended 251.4 hours, at an aggregate charge of $114,278.50, on matters relating to the Citadel Sale.

---

[8] Jenner has voluntarily reduced 14.3 hours and $5,251.50 in fees in October 2008 for time recorded by attorneys where more than one attorney attended a deposition.

(17)    <u>Internal Investigation (10205)</u>

82.    Under the Bankruptcy Code, the Trustee is required to investigate the acts, conduct, assets, liabilities and financial condition of the Debtor, the operation of the Debtor's business and the desirability of the continuance of such business, and all other matters relevant to the case and the formulation of a plan.  Jenner attorneys devoted numerous hours performing the internal investigation on behalf of the Trustee.  During the Current Compensation Period, Jenner continued its review of the Debtor's voluminous business records and tens of thousands of emails, telephone logs and telephone recordings by and between Sentinel's insiders, employees, customers and creditors.  Jenner attorneys also continued their extensive review of Bloomberg emails and interviewed witnesses and other parties. In order to minimize expenses related to the review of emails, phone logs and phone recordings, Jenner attorneys employed a tiered review process.  First, relevant search terms and individuals or companies were identified as those requiring focus.  The first-level reviewers searched the emails and listened to the telephone recordings, focusing on the specific search terms, individuals and companies, while preparing logs, charts and sheets summarizing the data.  These were then reviewed by the higher-level reviewers, who assessed the relevance of the materials to specific litigation or investigation.

83.    Additionally, in furtherance of his investigation, the Trustee employed a document and data service company, ADI, to synthesize and convert certain of the data that was unusable or unworkable for review.   Jenner attorneys and paraprofessionals continued to work closely with ADI to coordinate the conversion of the data and to prepare a secure, web-based system to which access can be granted to third parties for purposes of discovery in the pending adversary proceedings.

84.    All of the information gained in the review of the Debtor's business records, emails, telephone logs and telephone recordings has been and will continue to be used by the Trustee, Jenner and the Trustee's other professionals in litigation and all other aspects of this case.  Without the

significant time spent on internal investigation, the Trustee would have no basis upon which to proceed against certain individuals and entities, such as in the Insiders Adversary (as defined below), the BONY Adversary, the Citadel Adversary, the Auditor Adversary (as defined below), the Avoidance Actions (as defined below) and the FTN Adversary (as defined below), and would not be able to properly assess and determine the acts, conduct, assets, liabilities and financial condition of the Debtor, the operation of the Debtor's business, or all other matters relevant to the case.

85.     During the Current Compensation Period, Jenner expended 371.7 hours, at an aggregate charge of $106,801.00, on matters relating to the Trustee's internal investigation.

(18)     Creditor Committee Issues (10213)

86.     Time in this category relates to corresponding with the Committee, producing documents and providing information to the Committee, and participating in weekly update meetings or calls with the Committee.  It was necessary for Messrs. Lazar, Gair and McCall to attend the Committee call on September 29 and Messrs. Lazar and Gair to attend the Committee call on October 29 in order for the Committee to be updated by Mr. Lazar on bankruptcy-related issues and litigation, by Mr. Gair on the BONY Adversary and the investigation of certain securities claims, and by Mr. McCall on the Auditor Adversary (defined below) and the investigation of other potential causes of action.  During the Current Compensation Period, Jenner expended 24.7 hours, at an aggregate charge of $16,705.00 on Creditor Committee issues.

(19)     Claims Against Insiders (10221)

87.     On October 11, 2007, the Trustee filed an adversary complaint (the "Insiders Adversary") against certain insiders of the Debtor and certain trusts and investment vehicles controlled by those insiders (collectively, the "Insiders"), alleging that the Insiders engaged in extensive breaches of fiduciary duty and wrongdoing against Sentinel and its customers.  The Insiders

Adversary includes claims for, *inter alia*, (i) actions to recover preferences and fraudulent transfers pursuant to the Bankruptcy Code and Illinois law; (ii) breaches of fiduciary duty; (iii) knowing participation in the breaches of a fiduciary duty; (iv) unlawful dividends; (v) civil conspiracy; (vi) unjust enrichment; (vii) equitable subordination of claims; and (viii) disallowance of claims.

88.    On October 12, 2007, the Trustee filed a Motion for Preliminary Injunction or Prejudgment Attachment Order in the Insiders Adversary.  On October 25, 2007, this Court entered an Agreed Order by and among the Trustee and certain of the Insiders, pursuant to which certain of the Insiders agreed to transfer cash to an escrow account controlled by the Trustee, and consented to the filing of *lis pendens* notices against their residences as well as the freezing of certain affiliate accounts.

89.    This Court approved a settlement with certain of the Insiders on June 9, 2008, allowing the estate to collect approximately $10.7 million.  Jenner also was able to secure the return to the estate of certain monies transferred to preferred shareholders of SIG (as defined below), and for certain Sentinel affiliate accounts to be turned over to the Trustee.  During the Current Compensation Period, Jenner drafted a reply to two preferred shareholders' oppositions to turnover and was able to successfully negotiate a resolution of those matters that resulted in the turnover of monies to the estate.

90.    As of the filing of this Final Application, with the exception of the Trustee's claims against Charles Mosley, the Insiders Adversary is substantially completed.  During the Current Compensation Period, Jenner interviewed Mosley, reviewed documents and subpoenaed documents from third parties relative to the claims against Mosley.

91.    During the Current Compensation Period, Jenner expended 34.2 hours, at an aggregate charge of $14,825.00, on matters relating to claims against the Insiders.

(20)    <u>Audit Issues (10230)</u>

92.    Prior to the Petition Date, Altschuler, Melvoin & Glasser ("<u>AMG</u>") and McGladrey & Pullen LLP (the "<u>M&P</u>" and together with AMG, the "<u>Auditors</u>") were responsible for auditing Sentinel's financial statements.  Various parties in interest raised issues regarding the adequacy of those audits.  On March 20, 2008, the Trustee filed an adversary complaint against the Auditors, alleging that the 2006 audit failed to satisfy the most basic standards of accounting and auditing, the defendants ignored blatant violations of federal law being committed by the Insiders and failed to fulfill their legal duty to report such violations to Sentinel's regulators, the defendants "certified" Sentinel's financial statements when they knew that those statements materially misstated the facts and obfuscated violations of federal regulations critical to the protection of Sentinel's investors, and that the defendants aided and abetted breaches of fiduciary duty committed by certain Insiders, claiming damages in excess of $500 million (the "<u>Auditor Adversary</u>").  On June 20, 2008, the District Court withdrew the reference to this Court of the Auditor Adversary.  The case now is pending before Judge Zagel.

93.    During the Current Compensation Period, Jenner attorneys participated in hearings related to the Auditor Adversary, met and conferred with the Auditors' attorneys regarding discovery, scheduling and other issues.  Additionally, Jenner attorneys planned discovery strategy, drafted and responded to discovery requests, negotiated a confidentiality agreement and drafted a motion to compel.   Further, Jenner attorneys interviewed witnesses, continued their review of documents and emails and analyzed the Auditors' potential responses and defenses to the Auditor Adversary.

94.    Prior to the Current Compensation Period, the parties had fully briefed a motion to dismiss.  On September 26, 2008, Judge Zagel granted in part and denied in part the Auditor's

motion to dismiss, granting the Trustee leave to replead the claims that were dismissed.  Jenner attorneys conducted legal research related to repleading the Trustee's claims and, on October 31, 2008, the Trustee filed a First Amended Complaint.  On December 12 the Auditors filed an answer.  The parties have submitted a proposed discovery plan and currently are engaging in document discovery.

95.    During the Current Compensation Period, Jenner expended 728.1 hours, at an aggregate charge of $344,405.50, on matters relating to audit issues.

(21)    ERISA (10248)

96.    Prior to the Petition Date, the Debtor sponsored and maintained the Sentinel Management Group, Inc. Defined Benefit Pension Plan & Trust (the "Pension Plan"), a qualified defined benefit retirement plan.  Benefits under the Pension Plan are determined according to a formula based on the participant's years of service and a percentage of the participant's average monthly compensation.

97.    During the Current Compensation Period, Jenner continued to deal with issues related to terminating the Pension Plan and to correspond with the Pension Benefit Guaranty Corporation ("PBGC"), the Trustee's other professionals and plan beneficiaries regarding termination of the plan.  Specifically, Jenner advised and assisted the Trustee regarding the termination of the Pension Plan, the filing of reports with the appropriate agencies, the payment of applicable expenses from Pension Plan assets, and the distribution of the Pension Plan assets to the beneficiaries of the Pension Plan.  Jenner mailed and processed benefit election forms from plan beneficiaries, including follow-up contact with beneficiaries to ensure proper elections, and continues to work with the PBGC with respect to the termination to ensure that the PBGC will have no claims against the estate once the termination is complete.

29

98.     A significant portion of the fees relating to the termination of the Pension Plan, $80,767.25, have been reimbursed to the estate from plan assets.  Jenner assisted the Trustee in obtaining reimbursement of those fees.

99.     During the Current Compensation Period, Jenner expended 48.2 hours, at an aggregate charge of $17,900.50, on matters relating to ERISA and the Pension Plan.

(22)    Avoidance Actions (10256)

100.    Just prior to and after the Petition Date, certain customers of the Debtor received distributions from the Debtor, defined under the Plan as the Citadel Sale Distributions and the SEG 1 Special Distributions.  The recipients of these transfers allege that the distributions were not of property of the Debtor's estate and were "authorized" by an order of this Court, entered on August 20, 2007 (the "August 20 Order").  The Trustee alleges that the distributions were of property of the estate and were not authorized by the August 20 Order.

101.    On August 8, 2008, the Trustee filed a Motion to Clarify or in the Alternative to Vacate or Modify the Court's August 20, 2007 Order (the "Clarification Motion") seeking clarification that this Court's August 20 Order does not affect the Trustee's ability to bring avoidance actions under section 549 of the Bankruptcy Code or, in the alternative, to vacate or modify the August 20 Order pursuant to Federal Rule of Civil Procedure 60(b) and Bankruptcy Rule 9024.  During the Current Compensation Period, Jenner attorneys researched and drafted a reply to the objections to and attended oral argument on the Clarification Motion.  On October 28, 2008, this Court, making a clarification in open court, granted in part the Clarification Motion.

102.    Additionally, during the Current Compensation Period, Jenner investigated, reviewed documents and researched law related to, and drafted several avoidance complaints against the recipients of avoidable transfers.  On September 15, October 30, and November 24, 2008, the

Trustee filed 14 adversary proceedings seeking to avoid post-petition transfers improperly made to Seg 1 Customers and preferential pre-petition transfers to Seg 1 Customers, and to declare that funds and securities held in allegedly "segregated" accounts are not property of the Seg 1 Customers, but are property of the Debtor's estate (collectively, the "SEG 1 Avoidance Actions").  Jenner also worked with the Trustee and Navigant in the compilation and preparation of the facts and exhibits to support the SEG 1 Avoidance Actions.  On October 24, 2008, the defendants in the SEG 1 Avoidance Actions filed motions to stay the adversary proceedings.  During the Current Compensation Period, Jenner attorneys researched law related to and filed an objection in response to the motion and attended hearings related to the motion.

103.    Finally, during the Current Compensation Period, Jenner attorneys engaged in negotiations, attended hearings and began drafting other avoidance complaints which have not yet been filed.  Additionally, Jenner attorneys have reviewed and analyzed other potential preferences and defenses, and worked on alternative scenarios and term sheets for potential resolution of preference claims.  Further, Jenner attorneys have reviewed and analyzed evidence, arguments and research and made a presentation to the Committee regarding the property of the estate issue.

104.    During the Current Compensation Period, Jenner expended 913.7 hours, at an aggregate charge of $428,754.00, on matters related to avoidance actions.

(23)    SIG (10264)

105.    Sentinel Investment Group, Inc. ("SIG") is the parent of the Debtor.  It is no longer operating and has been dissolved by the Illinois Secretary of State.  In the settlement with the Insiders, which was approved by this Court on June 9, 2008, SIG's principals acknowledged the Debtor's undisputed claim against SIG, waived all claims or rights to any tax refund due to SIG, agreed to

refrain from contesting any bankruptcy case filed by or against SIG, and consented to and agreed to refrain from contesting the immediate appointment of a trustee for SIG's estate.

106.    During the Current Compensation Period, Jenner expended 87.0 hours, at an aggregate charge of $31,595.00, finalizing and filing an involuntary petition against SIG, preparing and filing a proof of claim for Sentinel, attending the first meeting of creditors, drafting a motion to transfer the case, reviewing documents and preparing schedules and the statement of financial affairs, drafting a motion to settle between SIG and the Sentinel Insiders, and drafting a motion related to allocation of an IRS refund received by SIG.

(24)    KBW (10272)

107.    The Trustee has been investigating the manner in which securities were sold to Sentinel by Keefe, Bruyette & Woods, Inc. ("KBW"), as well as the manner in which certain Sentinel insiders acquired securities from KBW.  In that regard, during the Current Compensation Period, Jenner attorneys have been engaged in the informal exchange of discovery with KBW and have spent time reviewing and analyzing documents received from KBW and emails maintained by the Debtor. Jenner attorneys also researched and analyzed case law, drafted a complaint and engaged in discussions with KBW.  On January 12, 2009, the Trustee filed a complaint against KBW in the District Court.

108.    During the Current Compensation Period, Jenner expended 304.6 hours, at an aggregate charge of $139,964.50 on matters related to KBW.

(25)    FTN (10280)

109.    The Trustee investigated the manner in which securities were sold to Sentinel by FTN Financial Securities Corp. ("FTN"), as well as the manner in which certain Sentinel insiders acquired securities from FTN.  On November 17, 2008, the Trustee filed a complaint against securities brokers Stephen M. Folan, Jacques de Saint Phalle, and FTN for aiding and abetting a breach of fiduciary duty,

commercial bribery, securities fraud, violation of the Illinois Blue-Sky law, violation of the Illinois Consumer Fraud Act, negligence and unjust enrichment, as well as for the avoidance of transfers of cash and securities to defendant FTN worth hundreds of millions of dollars made with the actual intent to hinder, delay and defraud Sentinel's creditors.  During the Current Compensation Period, Jenner attorneys engaged in the informal exchange of discovery with FTN and reviewed and analyzed documents received from FTN and emails, phone recordings and documents maintained by the Debtor. Jenner attorneys also researched and analyzed case law, drafted the complaint and engaged in discussions with Cohen.

110.    During the Current Compensation Period, Jenner expended 830.1 hours, at an aggregate charge of $406,577.50, on matters related to FTN.

(26)    Cohen (10299)

111.    The Trustee has been investigating the manner in which securities were sold to Sentinel by Cohen & Company Securities, LLC ("Cohen"), as well as the manner in which certain Sentinel insiders acquired securities from Cohen.  In that regard, during the Current Compensation Period, Jenner attorneys have been engaged in the informal exchange of discovery with Cohen and have spent time reviewing and analyzing documents received from Cohen and emails maintained by the Debtor. Jenner attorneys also researched and analyzed case law, drafted a complaint and engaged in discussions with Cohen.  On January 12, 2009, the Trustee filed a complaint against Cohen in the District Court.

112.    During the Current Compensation Period, Jenner expended 115.4 hours, at an aggregate charge of $46,570.50 on matters related to Cohen.

IV.    THE REQUESTED COMPENSATION SHOULD BE ALLOWED

113.    The foregoing professional services rendered during the Current Compensation Period, as well as the services discussed in the Prior Interim Applications, were necessary and

33

appropriate to the administration of the chapter 11 case and were in the best interests of the parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.  Jenner has taken significant efforts to ensure that the professional services were performed with expedience and in an efficient manner and without duplication of effort.

114.   In preparing this Final Application, Jenner calculated the amount of time spent by each attorney and paralegal in performing actual and necessary legal services for the Trustee. That data came directly from computer printouts that are kept on each Jenner client.  Time entries are kept on daily logs or on computer hard drives.  These entries are in turn reported to the firm's main frame computer which produced the time records for this Final Application. Jenner attorneys have reviewed the computer printouts for errors.

115.   The rates used in this Final Application are the customary and usual rates which Jenner charges clients on matters of this type.  In addition, the disbursements for which Jenner seeks reimbursement are the customary and usual expenses for which Jenner seeks reimbursement from its clients.  Jenner charges 6¢ per page for duplicating.  Jenner does not charge its clients for telecopies, domestic long distance telephone, data research and many overtime expenses, and takes those expenses into account in its overhead.  Jenner does not include charges for postage, messenger services, electronic legal research or duplicating in its overhead because it has determined that it is fairer to its smaller clients who proportionately use less of these services to have these expenses billed separately.  According to its outside auditors these charges fairly approximate the firm's actual costs and do not result in undue revenue for the firm.  The firm's hourly rates used for this Final Application do not compensate the firm for such expenses.

116.    Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

117.    In the instant case, Jenner respectfully submits that the services for which it seeks compensation in this Final Application were necessary for and beneficial to the Trustee's efforts in administrating the Debtor's estate, and necessary to and in the best interests of the Debtor's estate.  Jenner further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Trustee.

118.    Many of hours were spent by Jenner lawyers, often under time constraints requiring late night and weekend work, negotiating or litigating not only routine bankruptcy

issues with which a skilled bankruptcy practitioner should be familiar, but also highly technical issues relating to the Debtor's case.  Those included matters of government enforcement and investigation, securities and commodities law, and secured transactions.  Jenner used its considerable internal resources to ensure that attorneys with specific knowledge and practice area concentrations addressed non-bankruptcy issues, thereby minimizing unnecessary research and costs to the Debtor's estate.  To the extent reasonably practical, drafting and research tasks were assigned to attorneys at the associate level, while partners engaged in key negotiations and litigation.

119.    The rates charged by Jenner in this case are its standard rates for any bankruptcy matter, and are identical to the rates it would charge throughout the country in any bankruptcy case of this size and prominence.  The rates charged by Jenner also are consistent with reasonable and customary hourly rates charged by other attorneys throughout the country in matters of similar complexity, scope and national significance.

120.    In sum, the services rendered by Jenner were necessary and beneficial to the Debtor's estate, and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

CONCLUSION

WHEREFORE, Jenner respectfully requests: (i) allowance and payment of compensation for professional services rendered during the Final Compensation Period in the amount of $14,044,347.66; (ii) reimbursement for actual and necessary expenses Jenner incurred during the Final Compensation Period in the amount of $413,501.00; and (iii) that the Court grant Jenner such other and further relief as is just.

Dated: Chicago, Illinois
      January 23, 2009

Respectfully submitted,

**JENNER & BLOCK LLP**

By: _____ */s/ Vincent E. Lazar* _____

Catherine Steege (ARDC No. 6183529)
Vincent E. Lazar (ARDC No. 6204916)
Christine L. Childers (ARDC No. 6277245)
JENNER & BLOCK, LLP
330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone: 312-222-9350

*Counsel for Frederick J. Grede, Liquidation Trustee of Sentinel Liquidation Trustee (formerly the Chapter 11 Trustee for the estate of Sentinel Management Group, Inc.)*