IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SENTINEL MANAGEMENT GROUP, INC., | ) | Case No. 07 B 14987 |
| | ) | |
| Debtor. | ) | Hon. John H. Squires |

**FINAL APPLICATION OF FREDERICK J. GREDE, AS CHAPTER 11 TRUSTEE,
FOR PAYMENT OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD FROM AUGUST 28, 2007 THROUGH DECEMBER 17, 2008**

Frederick J. Grede, in his capacity as the chapter 11 trustee (the "Trustee") for the estate of Sentinel Management Group, Inc. (the "Debtor" or "Sentinel"),[1] hereby submits, pursuant to 11 U.S.C. §§ 326 and 330, the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals, the Trustee and Committee Members entered by this Court on November 8, 2007 (the "Administrative Order") and the Stipulation and Consent Order Regarding Adequate Protection of Customer Interests entered by this Court on January 10, 2008 (the "Customer Adequate Protection Stipulation"), this final application (the "Final Application") for (a) allowance and payment of total compensation in the amount of $1,935,450.00 for the actual, reasonable and necessary services rendered as Trustee for Sentinel for the period from August 28, 2007 through December 17, 2008 (this "Final Compensation Period"), and (b) reimbursement in the amount of $7,664.45 of the actual, reasonable and necessary expenses incurred during the Final Compensation Period. In further support of this Final Application, the Trustee respectfully states as follows:

---

[1] As of December 17, 2008, the effective date of the Plan (defined herein), the Trustee ceased acting as Chapter 11 Trustee and is now the Liquidation Trustee of the Sentinel Liquidation Trust and estate representative.

1725010.3

INTRODUCTION

1.  This Court has jurisdiction over this Final Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are sections 326 and 330 of Title 11 of the United States Code (11 U.S.C. §§ 101-1532, the "Bankruptcy Code"), as supplemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice, dated January 30, 1996 (the "UST Guidelines"), the Administrative Order and the Customer Adequate Protection Stipulation (collectively, the "Guidelines").

3.  To aid this Court in analyzing the Final Application, the Trustee has divided it into four parts. Part I of the Final Application provides a brief summary of the Debtor's case. Part II sets forth the Trustee's request for compensation of fees and reimbursement of expenses. Part III provides the standards this Court utilizes in reviewing the application of a Chapter 11 trustee. Finally, Part IV provides a description of the work performed and the expenses incurred by the Trustee and explains why the Trustee's compensation and fee request should be allowed by this Court and paid by the estate to the Trustee.

I.  SUMMARY OF SENTINEL'S CASE

4.  Sentinel is an Illinois corporation, headquartered prior to the bankruptcy in Northbrook, Illinois. Sentinel is registered with the Securities and Exchange Commission ("SEC") as an investment adviser, and with the Commodity Futures Trading Commission ("CFTC") as a futures commission

2

merchant ("FCM"). It is also a member of the National Futures Association ("NFA"), which is Sentinel's designated self-regulatory organization.

5. Sentinel managed investments of cash for various clients, including other FCMs, hedge funds, financial institutions, pension funds, and individuals. As of July 31, 2007, Sentinel claimed to have $1.5 billion in client assets under management.

6. Sentinel divided its customers into four groups, and under applicable law was supposed to strictly segregate the investments of these four customer groups from each other, and from Sentinel's own funds.

7. On August 13, 2007, Sentinel sent a letter to its customers representing that it could no longer honor redemptions due to a liquidity crisis.

8. On August 16, 2007 Sentinel entered into an agreement to sell to Citadel Equity Fund, Ltd., Citadel Limited Partnership, and Citadel Investment Group, L.L.C., (collectively referred to herein as "Citadel") the bulk of the securities purportedly associated with "SEG 1" (FCM) customer accounts.

9. On August 16 and 17, 2007, several customers sued Sentinel and sought and obtained temporary restraining orders prohibiting transfers of securities purportedly segregated for their benefit. On the afternoon of August 17, the NFA issued a Member Responsibility Action prohibiting Sentinel from selling, transferring, encumbering or otherwise disposing of certain assets.

10. On the evening August 17, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

11. On August 20, 2007, the Debtor distributed what was purported to be the proceeds of the Citadel sales transaction to SEG 1 customers. Soon thereafter, the Debtor consented to the appointment of a chapter 11 trustee.

12. Pursuant to Orders of this Court dated August 23 and 29, 2007, on August 28, 2007, the Trustee was appointed as the chapter 11 trustee of the Debtor by the United States Trustee. The Trustee accepted his appointment, and has acted, duly qualified, as Trustee of the Debtor.

13. The Trustee was authorized by the Court to retain Jenner & Block LLP ("Jenner"), as counsel, Navigant Consulting, Inc. ("Navigant"), as financial advisor, Macquarie Capital (USA), Inc. ("Macquarie"), as investment advisor, and Alan D. Lasko & Associates, PC, as tax accountants, to represent and assist the Trustee in carrying out his duties prescribed by the Bankruptcy Code.

14. Following his appointment, the Trustee conducted an extensive investigation into Sentinel's business operations. As a result of that investigation, the Trustee determined (among other things) that certain Sentinel insiders failed to observe requirements that customer funds and securities be segregated. Instead, certain insiders used hundreds of millions of dollars in securities that were supposed to be segregated as collateral for loans used to support trading that generated millions of dollars of profit for their benefit, and to finance the control of more than $3.0 billion in securities using leveraged repurchase agreement transactions. As a result of the investigation, the Trustee and his professionals have filed numerous adversary proceedings and other litigation against various defendants.

15. The Fourth Amended Chapter 11 Plan of Liquidation (the "Plan") was confirmed by this Court on December 15, 2008 and became effective on December 17, 2008 (the "Effective Date"), just over one year after the Trustee's appointment. As the Liquidation Trustee of the Sentinel Liquidation Trust, the Trustee has commenced making interim distributions, is pursuing litigation, and is now undertaking the other matters described below.

## II.  REQUEST FOR COMPENSATION OF FEES AND REIMBURSEMENT OF EXPENSES REQUESTED

16.     In accordance with the Guidelines, the Trustee seeks final allowance and payment herein of total compensation in the amount of $1,935,450.00 for the actual, reasonable and necessary services rendered as the Trustee of the Debtor and reimbursement of $7,664.45 for the actual, reasonable and necessary expenses incurred during the Final Compensation Period.

17.     Pursuant to the Administrative Order, as of the date of this Final Application the Trustee has been paid $1,370,280.00 for services rendered and $13,995.62 for expenses incurred during the Final Compensation Period, for total payments of $1,384,275.62.[2] Pursuant to the Administrative Order, the Trustee anticipates receipt of payments for fees and expenses by the time of the hearing on this Final Application in the additional amount of $55,500.00 for services and $319.25 for expenses incurred. The Trustee anticipates that the remaining $509,670.00, which represents amounts held back pursuant to the Administrative Order, will continue to be held back pending the Court's order on this Final Application.

18.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Final Compensation Period, but were not processed prior to the preparation of this Final Application, the Trustee reserves the right to request additional compensation for such services and reimbursement of such expenses.

## III.  STANDARDS FOR COMPENSATION OF A CHAPTER 11 TRUSTEE

19.     A trustee's request for compensation is governed by sections 326 and 330 of the Bankruptcy Code.

---

[2] In the Administrative Order, the Trustee agreed to the monthly payment of 80% of his fees calculated at 40 hours per week at $750 per hour, and to defer payment of the 20% held back and any monthly fees for hours worked over 40 hours per week until such date as he commenced making distributions to creditors. *See* Administrative Order ¶ 5(E).

5

20. Section 330 provides that a court may award a trustee "reasonable compensation for actual, necessary services rendered by the trustee . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> > (A) the time spent on such services;
> >
> > (B) the rates charged for such services;
> >
> > (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> >
> > (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> >
> > (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id*. § 330(a)(3). Additionally, section 330(a)(7) provides:

> In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

*Id*. § 330(a)(7). Neither section 330 nor section 326, which also governs trustee compensation, defines "commission."

21. Such "reasonable compensation" is subject to a maximum amount, or ceiling, as determined under the statutory formula set forth in section 326(a). Section 326(a) provides that:

> the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services . . . not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5

6

      percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

*Id*. § 326(a).

      22.    "The criteria for setting trustee fees under section 330 have closely resembled the factors used for awarding attorney fees." *In re Stoecker*, 118 B.R. 596, 601 (Bankr. N.D. Ill. 1990) (Squires, J.) (citing *In re Garland Corp.*, 8 B.R. 826, 829-832 (Bankr. D. Mass. 1981)). This Court considers the *Johnson* factors when reviewing fee applications. *Id.* at 602 (referring to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 602 n.2 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

## IV. THE TRUSTEE'S REASONABLE COMPENSATION AND EXPENSES SHOULD BE ALLOWED

### A. The Trustee's Request for Compensation is Reasonable

23. The Trustee requests $1,935,450.00 as total compensation for actual, reasonable and necessary services rendered as the Trustee of Sentinel during the Final Compensation Period.

24. The Trustee's compensation request herein has been calculated by multiplying the Trustee's agreed hourly rate of $750 per hour times the 2,580.6 hours the Trustee recorded working on this case, without any upward adjustment. Pursuant to the Administrative Order, the compensation paid to the Trustee to date was only interim compensation, and the Trustee is in no way precluded from seeking compensation or a commission significantly in excess of the amount sought herein. Indeed, given the complexity of this case, the amounts involved and the results obtained, a substantial commission request in excess of the Trustee's compensation request here would be more than justified. However, in light of his continued role as Liquidation Trustee, among other reasons, the Trustee has determined not to seek a commission that exceeds his compensation at his hourly rate for the hours actually worked by him in his capacity as Trustee. The Trustee reserves the right to amend upwards this compensation request should any party object to the Trustee's reasonable request for compensation.

25. As is discussed in detail below, each of the relevant factors set forth in section 330(a) of the Bankruptcy Code have been met. The Trustee's request for compensation is reasonable given the nature, extent and value of the services provided to the estate, which were necessary to the administration of and benefited the estate. The services were performed by the Trustee within a reasonable amount of time commensurate with the complexity, importance, and nature of the problems, issues, or tasks addressed by the Trustee. And, the compensation requested by the Trustee is a mere fraction of the commission ceiling set by section 326(a),

8

which would exceed $20,000,0000.[3] The Trustee's commission would be $20,564,683.62, based on the funds available for distribution on the Effective Date of $685,714,454.00, *see* ¶ 51, *infra*, and does not include future recoveries.

26.     Moreover, the Trustee's request is more than reasonable when considered in light of the *Johnson* factors.

        *(1)     Time and Labor Required (Summary of Services Provided)[4]*

27.     During the Final Compensation Period, the Trustee expended 2,580.6 hours, at an aggregate charge of $1,935,450.00,[5] conducting and overseeing an extensive investigation into Sentinel's business operations and financial affairs.

        (A)     <u>Meeting/Teleconference with Trustee Counsel, Financial Advisors</u>

28.     The Trustee expended 152.7 hours, at an aggregate charge of $114,525.00, supervising, meeting and conferring with his counsel or financial advisors during the Final Compensation Period.

---

[3] The commission is calculated based on the funds available for distribution on the Effective Date of $685,714,454.00, *see* ¶ 52, *infra*, and does not include future recoveries.

[4] The Trustee's detailed time and expense reports are attached hereto as <u>Group Exhibit A</u>; attached hereto as Exhibit B is a summary by project categories of the hours spent and fees generated by the services performed during the Final Compensation Period. To provide an orderly summary of the services rendered by the Trustee and in accordance with the Guidelines, the Trustee established several billing categories in connection with this case. This Final Application is intended to highlight the services rendered by the Trustee and is not intended to be a comprehensive detailed description of the work performed. Detailed descriptions of the day-to-day services and the time expended performing such services in each project billing category are contained in <u>Group Exhibit A</u> and show that the Trustee has been heavily involved in the performance of services as the Trustee.

[5] "Consideration of a lodestar factor is an important one to consider." *Stoecker*, 118 B.R. at 602 (citations omitted). It is a "very important" *Johnson* factor that "the Court considers in making an appropriate determination of what is reasonable and necessary compensation under section 330(a), subject to the cap of section 326(a)." *Id.*

9

29. The Trustee hired several professionals to assist him in fulfilling his duties as trustee of the Debtor's estate, which necessitated significant supervision and interaction with those professionals. Throughout this case, the Trustee met and conferred with his attorneys and financial advisors on a regular basis to discuss all aspects of the Debtor's case, ranging from the establishment of bank accounts and payment of bills to the liquidation of Sentinel's complex securities portfolio, case strategy and status, wind-down of the Debtor's business, court hearings and distributions to creditors.

(B) Meeting/Teleconference with Debtor Management or Management Counsel

30. During the Final Compensation Period, the Trustee expended 12.3 hours, at an aggregate charge of $9,225.00, securing the Debtor's premises, meeting with and interviewing multiple employees of the Debtor, getting generally orientated with the Debtor's business operations, discussing employee issues and attending interviews.

(C) Meeting/Teleconference - Creditor Issues, Committee or Committee Counsel (C)

31. The Trustee expended 435.4 hours, at an aggregate charge of $326,550.00, dealing with creditor issues or meeting and conferring with the Committee or Committee's counsel during the Final Compensation Period.

32. For the entirety of his tenure as Trustee, the Trustee spent many hours virtually every day meeting with creditors, groups of creditors, preferred shareholders of Sentinel Investment Group, Inc. (the Debtor's parent), the Creditors Committee, and the SEC, the CFTC and the NFA. The Trustee met with these constituencies throughout the case, including conducting a weekly update meeting or call with the Creditors Committee. In preparation for the weekly update meetings, the Trustee, with the assistance of Jenner and Navigant, reviewed and/or prepared various presentations on topics including

the Debtor's securities portfolio, the account structure, the loan with BONY, the repurchase transactions, pending and planned litigation and proposed distributions to creditors.

33.     The Trustee spent numerous hours meeting with the Creditors Committee, groups of creditors and shareholders attempting to craft and negotiate a settlement that would result in a consensual plan of liquidation. The Trustee made numerous presentations to creditors and met with creditors regularly to discuss claims, distributions and plan proposals. The Trustee also spent time reviewing and analyzing claims and customer statements, reviewing and analyzing potential preferences, and working on issues related to potential distributions to creditors, including numerous iterations and models of such distributions before he finally settled on the distributions and settlement offered by the Plan.

(D)     <u>Research & Analysis for Litigation/Complaint Support (D)</u>

34.     The Trustee expended 925.3 hours, at an aggregate charge of $693,975.00, on matters related to research and analysis for support of litigation during the Final Compensation Period.

35.     During the Final Compensation Period, the Trustee spent time reviewing and analyzing Sentinel's relationship with the Bank of New York ("<u>BONY</u>"), McGladrey & Pullen ("<u>McGladrey</u>), Citadel Equity Fund, Ltd. and Citadel Limited Partnership ("<u>Citadel</u>"), creditors, repurchase (repo) counterparties and brokers. The Trustee also spent time reviewing and analyzing all of the Debtor's financial transactions, wire transfers, investments, loans, the nature and structure of the repo transactions and the liquidation of the repo securities by the repo counterparties, the manner in which securities were sold to the Debtor, the manner in which certain Sentinel insiders acquired securities, and the sale of the Debtor's Seg 1 portfolio to Citadel. The Trustee was particularly suited to assist his

11

professionals in the research and analysis related to the litigation given his extensive expertise in commodities and clearing operations.

36. Further, while Jenner attorneys reviewed most of the Debtor's voluminous business records and the tens of thousands of emails, telephone logs and telephone recordings by and between Sentinel's insiders, employees, customers and creditors, as well as the Bloomberg emails, the Trustee spent numerous hours reviewing the significant items once they had been culled by Jenner attorneys. The Trustee also reviewed summaries of these reviews, as well as summaries of witness interviews and depositions.

37. The Trustee was involved in literally all aspects of the bankruptcy case and the adversary proceedings and other litigation, and spent time reviewing and providing comments to motions, objections, responses, replies, complaints, answers, and other pleading and papers. Further, the Trustee prepared for and was deposed regarding the plan negotiation process.

(E)    Court Hearings/Preparation (E)

38. The Trustee expended 129.8 hours, at an aggregate charge of $97,350.00, preparing for and attending court hearings during the Final Compensation Period.

39. The Trustee has been involved in all legal proceedings throughout the case and has attended most hearings. In preparation for these hearings, the Trustee reviewed the motions and other papers and discussed the issues with Jenner. Additionally, the Trustee prepared for, attended and testified at the two-day plan confirmation hearing.

(F)    Bankruptcy/Financial Reporting (F)

40. The Trustee expended 549.0 hours, at an aggregate charge of $411,750.00, on matters related to bankruptcy and financial reporting during the Final Compensation Period.

12

41. During the Final Compensation Period, the Trustee reviewed, analyzed and reconciled financial statements and cash and security account statements, including reviewing coupon and interest payments related to securities. He also worked with Navigant to prepare monthly operating reports. The Trustee also spent time and worked with Navigant and Jenner on issues related to the operation and wind-down of Sentinel's business, including negotiating with the Debtor's landlord, dealing with employee matters, opening and closing bank accounts, paying bills, terminating and rejecting contracts, closing and moving out of Sentinel's office space and liquidating the furniture, fixtures and equipment.

42. Further, the Trustee spent time and worked with Macquarie to review and analyze Sentinel's portfolio of securities in order to liquidate those securities for the benefit of the estate. The Trustee regularly reviewed the sale process, corresponded with Macquarie and the Committee's financial consultant about the process and analyzed offers to buy securities as they were received. As a result of the securities sale process, the Trustee has liquidated most of the portfolio of securities held by Sentinel.

(G)     Case Administration (G)

43. The Trustee expended 376.1 hours, at an aggregate charge of $282,075.00, on case administration matters during the Final Compensation Period.

44. Numerous professionals at several professional firms are advising and representing the Trustee in this case. Time in this category relates to time spent by the Trustee reviewing the monthly invoices and interim compensation requests of the professionals retained in this case, as well as directing Navigant regarding payments related to those invoices. Additionally, the Trustee spent time reviewing expert witness resumes, reviewing case calendars prepared by Jenner, processing vendor invoices, and reviewing memoranda and other papers regarding matters that do not

neatly fit into one of the other billing categories, such as the liquidation trust agreement, tax issues, and pension plan issues.

### *(2)  Novelty and Difficulty of Questions*

45. The Debtor's case involves more than a billion dollars in liabilities, and is unique in several respects. The scant precedent available concerning this unusual FCM case, the significant fraud perpetrated by certain Sentinel insiders, and the few remaining employees have resulted in significant challenges in the administration of the Debtor's estate. Additionally, as the Court is aware, the Debtor's bankruptcy case is large and complex, and involves not only several significant adversary proceedings that already have been filed but also several other potential adversary proceedings or lawsuits that are likely to be filed in the future.

### *(3)  Skill Required to Perform Services Properly*

46. As indicated, this Debtor's case is unique and complex. The Trustee was selected because of his background and the experience he was able bring to the administration of the Debtor's case. The Trustee earned a B.S. in Finance from the University of Illinois, Urbana-Champaign, a J.D. from the DePaul University School of Law, and a M.B.A. from the University of Chicago, Graduate School of Business. The Trustee held numerous positions at the Chicago Board of Trade between 1977 and 2000, including Audit Staff Supervisor, Administrator of the Office of Investigations and Audits, Vice President of Administration and Planning, and Executive Vice President of Planning and Operations. The Trustee was the Chief Operating Officer of Hong Kong Exchanges and Clearing Limited and the Chief Executive Officer of the Hong Kong Futures Exchange from 2000 to 2003. Since 2003, the Trustee has been the Chairman of Vega Financial Engineering Limited, a consulting firm specializing in stock, option and derivative markets in Asia. The Trustee's extensive managerial, operational and strategic experience with the stock, futures and options markets, as well as his

regulatory experience, were important to his understanding of the Debtor's business, to analyzing and selling the Debtor's portfolio of securities and to his dealings with the majority of the Debtor's creditors throughout this case.

*(4)    Preclusion of Employment Due to Acceptance of Case*

47.    The Trustee devoted a significant portion of time to serving as the Trustee in this case, during most months more than full time, and knew and accepted that such an undertaking would preclude him from other employment.

*(5)    Customary Fee*

48.    During the Final Compensation Period, the Trustee's hourly billing rate was $750.00 per hour. In view of the Trustee's lengthy and distinguished business career, an hourly rate of $750.00 is appropriate and reasonable. Additionally, given that the Trustee is not precluded from seeking a commission or additional compensation, *see* ¶ 24, *infra*, and such commission under 326(a) could be substantially higher in any event given the ceiling set by section 726(a), the rate of $750.00 per hour multiplied by the number of hours expended by the Trustee is not unreasonable.

*(6)    Whether Fee is Fixed or Contingent*

49.    The Trustee's fee is neither fixed nor contingent, so this factor is of no significance to this Final Application.[6]

*(7)    Time Limitations Imposed by Client or Circumstances*

50.    Given the fraud perpetrated by the Insiders, the creditors in this case have, understandably, been anxious for the Trustee to confirm a plan and commence distributions. Further, as this Court is aware, there have been two competing groups of major creditors throughout this process, the Seg 1 customers and the Seg 3 customers, each of which had

---

[6] That is, except to the extent that, "[i]n a broader sense, any trustee's fees are contingent to the extent of the amount of assets administered." *See Stoecker*, 118 B.R. at 602.

15

differing expectations of the Trustee. The Trustee worked arduously to broker a consensual plan; however, as in many bankruptcy cases, he was unable to make all creditor constituencies happy and a small group of creditors, a subset of the Seg 1 customers, have opposed the Trustee's efforts. Nonetheless, in the short span of just over one year, the Trustee was able to liquidate most of the Debtor's portfolio of securities, confirm the Plan, commence distributions, and filed numerous high-profile adversary proceedings, including against Sentinel's insiders, the Bank of New York, Sentinel's auditors, recipients of pre- and post-petition preferences and its securities brokers. Two of the adversaries have concluded, and one of the adversaries has substantially concluded by way of a settlement with Sentinel's insiders.

*(8)    Amount Involved and Result Obtained*

51.    The Debtor's case involves more than $1.5 billion in claims filed against the estate.

52.    The following is a summary of the increase in Sentinel's liquid assets from August 29, 2007[7] through the Effective Date of the Plan:

|  | 8/29/2007 | 12/17/2008 |
|---|---|---|
| Beginning Balance in all Accounts | $65,337,793 | $ 65,337,793 |
| Receipts from Operations | 0 | $594,626,420 |
| Other Receipts | 0 | $ 25,750,240 |
| Total | $65,337,793 | $685,714,454 |

53.    Positive changes were the result of the Trustee's diligent efforts to sell securities, collections of receivables, maturities, redemptions, receipt of interest and dividends, return of certain securities from certain repurchase counterparties, receipt of the settlement payment from the Insiders, return of surplus liquidation proceeds held by repurchase counterparties, and sales of season tickets, office equipment and furniture.

---

[7] The Trustee was appointed on August 28, 2007.

16

54. From August 29, 2007 through December 17, 2008, the estate paid $322,930.00 in operating expenses and $29,940,519.00 in other expenses, including $21,582,033.92 in professional fees and expenses ($21,090,303.90 in fees and $491,730.02 in expenses) to the Trustee's professionals (Jenner, Navigant, Macquarie and Lasko) and the Committee's professionals (Quinn Emanuel Urquhart Oliver & Hedges, LLP, DLA Piper US LLP and Vincent Butkiewicz).

55. The Trustee currently has pending litigation from which he anticipates additional recoveries for the estate, including the adversary proceedings against BONY, the Auditors, the Seg 1 customers, Citadel and Goldman, and FTN. The Trustee also expects to bring additional adversary proceedings.

*(9)    Experience, Reputation and Ability of Trustee*

56. As indicated above, in the discussion of the third *Johnson* factor (skill required to perform services properly), the Trustee had the experience, reputation and ability to handle this case, as has been proven by the results obtained and as described more fully herein.

*(10)   Undesirability of Case*

57. The Trustee does not believe that this case would be undesirable to any trustee and, therefore, does not place any significance in this factor.

*(11)   Nature and Length of Professional Relationship with Client*

58. The Trustee was appointed on August 27, 2007, and had no pre-existing relationship with Sentinel or its creditors. The Plan became effective on December 17, 2008, just over one year after the Trustee's appointment. In that short amount of time, the Trustee was able to unravel a complicated fraud perpetrated by Sentinel's insiders, file numerous adversary proceedings, sell most of Sentinel's portfolio of securities, confirm the Plan and commence distributions.

*(12)   Awards in Similar Cases*

59. As this Court noted in *Stoecker*, "awards in similar cases are of minimal assistance because each application must be weighed on its own merits." *Stoecker*, 118 B.R. at 602. That being said, this case is so unique that there really are no cases with which to compare it and to compare the services provided by the Trustee.

60. The Trustee believes, however, that the closest example would be the fees awarded to the chapter 11 trustee of Refco Capital Markets, Ltd. in the case of Refco, Inc. ("Refco"). Refco was a securities and derivatives broker that, like Sentinel, engaged in significant fraud. The Refco case, like this case, involved significant disputes between groups of customers concerning the priority of their claims vis-à-vis each other, and also involved in excess of a billion dollars in liabilities. The Refco trustee co-proposed a chapter 11 plan of liquidation, which also was confirmed roughly one year after the commencement of Refco's bankruptcy case. *See In re Refco, Inc.*, No. 05-60006 (RDD), Final Application of Marc S. Kirschner as Chapter 11 Trustee, at ¶¶ 34-35, Doc. No. 4475 (Bankr. S.D.N.Y. Feb. 26, 2007). The Refco trustee filed a final fee application seeking a fixed fee of $6,000,000, which covered the approximate 8½ month period from his appointment through the effective date of the plan and the first two months of his service as plan administrator. *Id.* ¶ 46. The Refco trustee recorded 2,505.6 hours working on the matter during the request period, which equates to a lodestar rate of $2,129,760. *Id.* ¶ 50.[8] The Court awarded the Refco trustee the full $6,000,000 sought by him. *See In re Refco, Inc.*, No. 05-60006 (RDD), Order Granting Final Application of Marc S. Kirschner as Chapter 11 Trustee, Doc. No. 5015 (Bankr. S.D.N.Y. April 12, 2007). Here, the Trustee expended 2,580.6 hours, at an aggregate charge of $1,935,450.00, working on a similar case to Refco, and thus is

---

[8] The Refco trustee's customary and hourly rate was $850 per hour.

18

seeking considerably less than was awarded to the Refco trustee, measured either on an hourly basis or in the aggregate.

B.     The Trustee's Request for Reimbursement of Expenses is Reasonable

61. During the Final Compensation Period, the Trustee incurred expenses totaling $7,664.45 as the Chapter 11 Trustee. Attached hereto as Exhibit C is a schedule specifying the categories of expenses for which the Trustee is seeking reimbursement and the total amount for each such expense category; Group Exhibit A contains a detailed list of all expenses for which the Trustee seeks reimbursement.[9]

62. Specifically, the Trustee incurred the following types of expenses:

- Hotel: The Trustee regularly maintains an office at his home in Hinsdale, Illinois. After his appointment, the Trustee regularly traveled back and forth to Sentinel's office in Northbrook, Illinois, until closing the office on April 1. In October, November and December, during the first months of his investigation, the Trustee had several weeks of long hours and, instead of traveling back and forth between Hinsdale and Northbrook, the Trustee stayed in a hotel in Northbrook and incurred expenses totaling $2,751.84. The receipts related to the hotel expenses are attached hereto as Exhibit D.

- Transportation: The Trustee also incurred transportation expenses totaling $3,893.99 related to travel by taxi, train or his own vehicle to Sentinel's

---

[9] The Trustee has voluntarily reduced certain expenses totaling $6,962.47, including expenses for mileage, parking and train to and from Jenner's office (see footnote 8), meals and office supplies.

offices, Jenner's offices and other places within the city for meetings and court hearings.[10]

- <u>Out of Town Travel</u>: The Trustee also incurred expenses totaling $504.81 related to airfare for travel to Washington, DC on December 17, 2007 to attend a meeting with the CFTC. The receipts related to this travel are attached hereto as <u>Exhibit E</u>.

- <u>Long Distance Phone Calls</u>: The Trustee also incurred expenses totaling $513.80 for long distance phone calls.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests: (i) allowance and payment of total compensation for the actual, reasonable and necessary services rendered as Trustee for Sentinel during the Final Compensation Period in the amount of $1,935,450.00; (ii) reimbursement of the actual, reasonable and necessary expenses incurred during the Final Compensation Period in the amount of $7,664.45; and (iii) that the Court grant the Trustee such other and further relief as is just.

Dated: January 23, 2009

Respectfully submitted,

By: _____
Frederick J. Grede

c/o JENNER & BLOCK, LLP
330 North Wabash Avenue
Chicago, Illinois 60611-7603

*Liquidation Trustee for the Sentinel Liquidation Trust (formerly Chapter 11 Trustee for estate of Sentinel Management Group, Inc.)*

---

[10] After closing Sentinel's office on April 1, 2007, the Trustee maintained a regular office at Jenner's offices. The Trustee recorded expenses related to travel (mileage, parking, train) to and from Jenner's offices from April 1, 2007 through December 17, 2008 totaling $6,664.72. The Trustee has voluntarily agreed to reduce those expenses.

20