**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SENTINEL MANAGEMENT GROUP, INC., | ) | Case No. 07 B 14987 |
| | ) | |
| Debtor. | ) | Hon. John H. Squires |

**FINAL APPLICATION OF
MACQUARIE CAPITAL (USA) INC., AS INVESTMENT ADVISOR FOR THE TRUSTEE,
FOR PAYMENT OF COMPENSATION FOR SERVICES RENDERED
AND FOR REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD FROM SEPTEMBER 5, 2007 THROUGH DECEMBER 17, 2008**

Macquarie Capital (USA) Inc. ("Macquarie"), investment advisor to Frederick J. Grede, the chapter 11 trustee (the "Trustee") for the estate of Sentinel Management Group, Inc. (the "Debtor" or "Sentinel"), hereby submits, pursuant to 11 U.S.C. § 330, the Order Approving Application of Debtor to Retain and Employ Macquarie as Investment Advisor (the "Macquarie Retention Order"), the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals, the Trustee and Committee Members entered by this Court on November 8, 2007 (the "Administrative Order") and the Stipulation and Consent Order Regarding Adequate Protection of Customer Interests entered by this Court on January 10, 2008 (the "Customer Adequate Protection Stipulation"), this final application (the "Final Application") for (a) allowance and payment of compensation in the amount of $2,349,850 for the actual, reasonable and necessary investment advisory and transaction services rendered to the Trustee for the period from September 5, 2007 through December 17, 2008 (this "Final Compensation Period"), and (b) reimbursement in the amount of $578 of the actual, reasonable and necessary expenses incurred during the Final Compensation Period. In further support of this Final Application, Macquarie respectfully states as follows:

1611854.04

## INTRODUCTION

1.  This Court has jurisdiction over this Final Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicate for the relief requested herein is section 330 of Title 11 of the United States Code (11 U.S.C. §§ 101-1532, the "Bankruptcy Code"), as supplemented by Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice, dated January 30, 1996 (the "UST Guidelines"), the Administrative Order and the Customer Adequate Protection Stipulation (collectively, the "Guidelines").

## SUMMARY OF SENTINEL'S CASE

3.  Sentinel is an Illinois corporation, headquartered at the time of bankruptcy in Northbrook, Illinois. Sentinel is registered with the Securities and Exchange Commission ("SEC") as an investment adviser ("Investment Adviser"), and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant ("FCM"). It is also a member of the National Futures Association ("NFA"), which is Sentinel's designated self-regulatory organization.

4.  Sentinel managed investments of cash for various clients, including other FCMs, hedge funds, financial institutions, pension funds, and individuals. As of July 31, 2007, Sentinel claimed to have $1.5 billion in client assets under management.

5.  Sentinel divided its customers into four groups, and under applicable law was supposed to strictly segregate the investments of these four customer groups from each other, and from Sentinel's own funds.

1611854.04

6. On August 13, 2007, Sentinel sent a letter to its customers representing that it could no longer honor redemptions due to a liquidity crisis.

7. On August 16, 2007 Sentinel entered into an agreement to sell to Citadel Equity Fund, Ltd. and Citadel Limited Partnership the bulk of the securities purportedly associated with "SEG 1" (FCM) customer accounts.

8. On August 16 and 17, 2007, several customers sued Sentinel and sought and obtained temporary restraining orders prohibiting transfers of securities purportedly segregated for their benefit. On the afternoon of August 17, the NFA issued a Member Responsibility Action prohibiting Sentinel from selling, transferring, encumbering or otherwise disposing of certain assets.

9. On the evening August 17, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

10. On August 20, 2007, the Debtor distributed what was purported to be the proceeds of the Citadel sales transaction to SEG 1 customers. Soon thereafter, the Debtor consented to the appointment of a chapter 11 trustee.

11. Pursuant to Orders of this Court dated August 23 and 29, 2007, on August 28, 2007, the Trustee was appointed as the chapter 11 trustee of the Debtor by the United States Trustee. He has accepted his appointment, and is acting, duly qualified, as Trustee of the Debtor.

12. Following his appointment, the Trustee conducted an extensive investigation into Sentinel's business operations. As a result of that investigation, the Trustee determined (among other things) that certain Sentinel insiders failed to observe requirements that customer funds and securities be segregated. Instead, certain insiders used hundreds of millions of dollars in securities that were supposed to be segregated as collateral for loans used to support trading that generated millions of dollars of profit for their benefit, and to finance the control of more than $3.0 billion in securities using leverage repurchase agreement transactions.

13. The Fourth Amended Chapter 11 Plan of Liquidation (the "Plan") was confirmed by

3

1611854.04

this Court on December 15, 2008 and became effective on December 17, 2008. The Trustee, in his capacity as the Liquidation Trustee of the Sentinel Liquidation Trust, is now making interim distributions, pursuing litigation, and undertaking certain other matters described below.

PROFESSIONAL COMPENSATION

AND REIMBURSEMENT OF EXPENSES REQUESTED

14. On October 9, 2007, the Court entered the Macquarie Retention Order, authorizing the Trustee to retain Macquarie as his investment advisor, *nunc pro tunc* to September 5, 2007.

15. On November 8, 2007, the Court entered the Administrative Order. Pursuant to the Administrative Order, the Court established a procedure for interim compensation and reimbursement of expenses for professionals appointed in this case.

16. On January 10, 2008, the Court entered the Customer Adequate Protection Stipulation, pursuant to which customers of the Debtor are granted adequate protection, if applicable and as set forth in the Customer Adequate Protection Stipulation, pursuant to section 361 and 363(e), for the use of property to make payments to professionals in accordance with the Administrative Order.

17. Prior to this Final Application, Macquarie submitted its First through Third Interim Applications and a supplement to its First Interim Application:

a. On January 30, 2008, Macquarie filed the First Interim Fee Application Of Macquarie Securities (USA) Inc., As Investment Advisor To The Trustee, For Payment Of Interim Compensation For Services Rendered And For Reimbursement Of Expenses Incurred For The Period From September 5, 2007 Through December 31, 2007 (the "First Interim Fee Application"), requesting compensation for professional services performed by Macquarie in the aggregate amount of $391,013 and for reimbursement of expenses in the aggregate amount of $1,911. In an Order dated March 4,

4

2008, this Court awarded fees in the amount of $375,000 and expenses in the amount of $431, and provisionally disallowed the remaining fees and expenses requested in the First Interim Fee Application.

  b. On March 28, 2008, Macquarie filed its Supplement to the First Interim Fee Application (the "Supplement to First Interim Fee Application"), requesting the Court reconsider compensation for professional services performed by Macquarie in the amount of $16,013. In an Order dated April 15, 2008, this Court awarded the fees in the amount of $16,013.

  c. On May 30, 2008, Macquarie filed the Second Interim Fee Application Of Macquarie Capital (USA) Inc., As Financial Advisor To The Trustee, For Payment Of Interim Compensation For Services Rendered And For Reimbursement Of Expenses Incurred For The Period From January 1, 2008 Through April 30, 2008 (the "Second Interim Fee Application"), requesting compensation for professional services performed by Macquarie in the aggregate amount of $1,106,467 and for reimbursement of expenses in the aggregate amount of $111. In an Order dated June 25, 2008, this Court awarded fees in the amount of $1,106,467 and expenses in the amount of $111.

  d. On September 30, 2008, Macquarie filed the Third Interim Fee Application Of Macquarie Capital (USA) Inc., As Financial Advisor To The Trustee, For Payment Of Interim Compensation For Services Rendered And For Reimbursement Of Expenses Incurred For The Period From May 1, 2008 Through August 31, 2008 (the "Third Interim Fee Application"), requesting compensation for professional services performed by Macquarie in the aggregate amount of $570,579 and for reimbursement of expenses in the aggregate amount of $18. In an Order dated November 6, 2008, this Court awarded fees in the amount of $570,579 and expenses in the amount of $18.

  18. The following chart summarizes Macquarie's requests for interim compensation and those fees and expenses that have been awarded to date by the Court:

5

1611854.04

| Application | Period | Fees Requested | Fees Awarded | Expenses Requested | Expenses Awarded |
|---|---|---|---|---|---|
| First Interim Fee Application | 9/5/2007 - 12/31/2007 | $391,013.00 | $375,000.00 | $1,911.00 | $431.00 |
| Supplement to First Interim Fee Application | 9/5/2007 - 12/31/2007 | Included in above | $16,013.00 | N/A | N/A |
| Second Interim Fee Application | 1/1/2008 - 4/30/2008 | $1,106,467.00 | $1,106,467.00 | $111.00 | $111.00 |
| Third Interim Fee Application | 5/1/2008 - 8/31/2008 | $570,579.00 | $570,579.00 | $18.00 | $18.00 |

19.     In accordance with the Guidelines, Macquarie seeks final allowance and payment herein of (a) compensation in the amount of $281,791 for the actual, reasonable and necessary advisory services rendered to the Trustee and reimbursement of $18 for the actual, reasonable and necessary expenses incurred for the period from September 1, 2008 through December 17, 2008 (this "Current Compensation Period"), and (b) total compensation in the amount of $2,349,850 for the actual, reasonable and necessary advisory services rendered to the Trustee and reimbursement of $578 for the actual, reasonable and necessary expenses incurred during the Final Compensation Period.

20.     Pursuant to the Administrative Order, as of the date of this Final Application the Trustee has paid Macquarie $2,200,589 for professional services rendered to the Trustee during the Final Compensation Period and $560 for expenses incurred by Macquarie during the Final Compensation Period, for total payments of $2,201,149.  Pursuant to the Administrative Order, Macquarie anticipates receipt of payments for fees and expenses by the time of the hearing on this Final

6

1611854.04

Application in the amount of $92,903 for professional services and $18 for expenses incurred. Macquarie anticipates that the remaining $56,358, which represents twenty percent of Macquarie's fees for professional services, will be held back by the Trustee pursuant to the Administrative Order pending the Court's order on this Final Application.

21. The fees sought by this Final Application reflect an aggregate of 6,057.3 hours of professional time spent and recorded in performing services for the Trustee during the Final Compensation Period. This fee request does not include time that might be construed as duplicative or otherwise not beneficial to the Trustee or the Debtor's estate.

22. The Macquarie Retention Order authorizes a fixed monthly advisory fee, as well as a transaction-based fee for the sale of securities. None of Macquarie's requested fees have been generated through hourly billings.

23. In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

24. Attached hereto as Exhibit A is a schedule setting forth the aggregate fees and expenses of Macquarie during the Final Compensation Period. Also attached hereto as Exhibits B1 and B2 are schedules setting forth the calculations of Macquarie's Transaction Fees for security sales pursuant to the Macquarie Retention Order.[1]

25. Attached hereto as Exhibit C is a schedule setting forth all Macquarie professionals who have performed services in this chapter 11 case during the Final Compensation Period, the capacities in which each such individual is employed by Macquarie and the aggregate number of hours

---

[1] Pursuant to the Macquarie Retention Order, Macquarie is entitled to a Transaction Fee of 0.20% of the aggregate Transaction Value up to $400,000,000 and a Transaction Fee of 0.50% of the aggregate Transaction Value from $400,000,001 up to $500,000,000. The Transaction Fee listed above is calculated under this structure. Please see Exhibits B1 and B2 for additional calculation details.

expended in this matter. Also attached hereto as <u>Exhibit D</u> is a schedule summarizing by project billing category, the total hours expended by all persons providing services on the project.

26. Attached hereto as <u>Exhibits F1 and F2</u> are schedules specifying the categories of expenses for which Macquarie is seeking reimbursement and the total amount for each such expense category; <u>Exhibit G</u> contains a detailed list of all expenses for which Macquarie seeks reimbursement during the Current Compensation Period. This schedule has been adjusted for and does not reflect certain expenses incurred by Macquarie for which it will not be seeking reimbursement.

27. Macquarie maintains computerized records of the time spent by all professionals and the expenses incurred in connection with the representation of the Trustee in the Debtor's chapter 11 case. Subject to redaction for the attorney-client privilege where necessary, copies of these computerized records will be furnished to the Court and, pursuant to the Administrative Order, have previously been furnished together with the firm's monthly fee statements to the Trustee, counsel to the Official Committee of Unsecured Creditors of the Debtor (the "<u>Committee</u>"), and the U.S. Trustee.

28. The fees charged by Macquarie in this case are billed in accordance with its existing billing rates and procedures in effect during the Final Compensation Period. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable cases in a competitive national market.

29. All of the services for which compensation is sought were rendered to the Trustee solely in connection with these cases, in furtherance of the duties and functions of the Trustee and not on behalf of any individual creditor or other person.

30. Macquarie has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

31. Macquarie has not shared, or agreed to share, (a) any compensation it has received or

may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive. No promises have been received by Macquarie or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

32.  The Trustee has reviewed and approved Macquarie's monthly fee statements prior to the filing of this Final Application.

SUMMARY OF SERVICES PROVIDED AND EXPENSES INCURRED

33.  The Fourth Amended Chapter 11 Plan of Liquidation for Sentinel Management Group, Inc. has been confirmed. The Effective Date of the Plan was December 17, 2008 and the Liquidation Trustee has commenced making initial distributions and is carrying out his duties, including pursuing the below-described litigation, as the Liquidation Trustee of the Sentinel Liquidation Trust.

34.  During the Final Compensation Period, Macquarie performed a wide variety of tasks on the Trustee's behalf in connection with his administration of the Debtor's case. The Debtor's case involves more than a billion dollars in liabilities, and a portfolio of securities exceeding $800 million in historical cost. The significant fraud perpetrated by certain Sentinel insiders, the various reporting and custodial systems and the few remaining employees have resulted in significant challenges in the administration of the Debtor's estate.

35.  Since the filing of the First, Second and Third Interim Applications and the Supplement to First Interim Application (together, the "Prior Interim Applications"), this Court has entered, on December 15, 2008, an Order confirming the Plan. Because the Prior Interim Applications contain lengthy descriptions of matters handled during those time periods, this Final Application does not repeat all of that detail. The following descriptions of matters therefore pertain solely to matters handled during the Current Compensation Period.

36.  To provide an orderly summary of the services rendered to the Trustee by

Macquarie and in accordance with the Guidelines, Macquarie has established numerous billing categories in connection with this case. The following summary is intended to highlight the services rendered in each separate material billing category and is not intended to be a comprehensive detailed description of the work performed. Detailed descriptions of the day-to-day services provided and the time expended performing such services in each project billing category are attached as Exhibit E hereto and show that Macquarie has been heavily involved in the performance of services for the Trustee on a daily basis, including night and weekend work, often under pressure to meet deadlines. Detailed descriptions of the day-to-day services provided and the time expended performing such services in each project billing category have been previously provided to the Trustee, counsel to the Committee, and the U.S. Trustee pursuant to the Administrative Order. A summary by project billing category of the total hours expended by all persons providing services on the project is annexed in Exhibit D.

37. The primary professional services that Macquarie rendered during the Current Compensation Period are described in Paragraphs 38 through 45 below. Attached hereto as Exhibit E is an itemization by category of services of the time spent by each professional.

(1)    Retention and Preparation of Fee/Expense Applications and/or Monthly Invoice (Code 2)

38. During the Current Compensation Period, Macquarie expended 63.0 hours preparing documents related to its monthly interim compensation requests, its Third Interim Fee Application, its supplemental disclosure affidavit and other related matters.

(2)    Litigation Support Activities (Code 19)

39. During the Current Compensation Period, the Trustee continued to investigate the nature of several transactions and aspects of the Sentinel business, as well as the relationships between Sentinel and various other parties. Further, the Trustee and his counsel have developed multiple legal claims, complaints and causes of actions against these adversary parties in an effort to increase creditor recoveries. Macquarie has assisted the Trustee and his counsel in these investigations by analyzing the

10

1611854.04

materials from various transactions and creating reports to aid counsel in their litigation efforts. Macquarie's work has also included in-depth research into several individual transactions executed prior to the Petition Date. Finally, Macquarie also assisted the Trustee and counsel in developing and reviewing the complaints against these adversary parties.

40. During the Current Compensation Period, Macquarie expended 135.2 hours, 35.1% of total hours, performing litigation support activities.

(3)     Securities Pricing Analysis and Research (Code 30)

41. At the Petition Date, Sentinel held a diverse portfolio of over 160 securities ranging from plain vanilla fixed-rate corporate bonds to complex, privately-placed floating-rate corporate bonds, as well as holdings in collateralized debt obligations ("CDO securities"), mortgage-backed and other asset-backed securities and fixed-rate capital securities. Each of the greater than 160 securities had to be analyzed on an individual basis due to unique coupon structures and differing underlying security characteristics.

42. As investment advisor to the Trustee, Macquarie spent a significant number of hours on the analysis of Sentinel's portfolio, which included maintaining a detailed database of all Sentinel securities holdings including information regarding issuer, coupon structure and rate and other features in preparation for the securities sale process. The process also included continuing analysis of securities held in the Sentinel portfolio in order to provide an up-to-date indicative valuation range for each of the securities through a combination of research in publicly available market pricing sources and through the establishment of contacts with various securities dealers to provide indicative quotes. Further, Macquarie has completed considerable research to aid the Trustee and Committee in understanding the complex structures of the various CDO securities held in the Sentinel portfolio. Additionally, in the context of researching the securities, Macquarie has had to work extensively with trustees to the CDOs held in the portfolio in order to rectify missing coupon payments and to split certain combination note CDOs into

11

their more marketable constituent pieces.

43. During the Current Compensation Period, Macquarie expended 80.9 hours, 21.0% of total hours, on security pricing analysis and research.

(4)  Preparation for and Execution of Securities Sale (Code 31)

44. This category includes time spent preparing a recommended strategy and executing the sale of three securities held in Sentinel's portfolio and generating total proceeds of $3.1 million during this Current Compensation Period. Over the course of the Debtor's bankruptcy proceedings, Macquarie has assisted the Trustee in executing the sale of 138 securities, generating total proceeds of approximately $460 million in aggregate. As investment advisor, Macquarie spent a considerable amount of time and employed substantial industry resources while assisting the Trustee in this process. Macquarie had extensive discussions with the Trustee and his counsel, as well as the Committee and its professionals regarding the recommended sale strategy and proposed sale timeline. Further, the sale process required significant communications with multiple securities dealers to discuss the anticipated process, as well as coordination with dealers' compliance and legal departments at great length to establish new trading accounts in order to transact on behalf of the Trustee. These efforts have culminated in the coordination and execution of a competitive security sale process for individual securities, which included analyzing and evaluating the characteristics of individual securities to be sold, preparing sale recommendations to the Trustee, and analyzing financial markets. Further, throughout this process Macquarie has contacted dealers regarding specific securities being sold, evaluated all bids received for the securities from the dealers, communicated with the Trustee to determine the highest and best offer and coordinated all back office and settlement functions, as well as provided daily reporting to the Trustee and the Committee regarding the sale activity.

45. During the Current Compensation Period, Macquarie expended 87.4 hours, 22.7% of total hours, on matters relating to the preparation for and execution of the securities sales.

1611854.04

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

46. The foregoing professional services rendered during the Current Compensation Period, as well as the services discussed in Prior Interim Applications, were necessary and appropriate to the administration of the chapter 11 case and were in the best interests of the parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. Macquarie has taken significant efforts to ensure that the professional services were performed with expedience and in an efficient manner and without duplication of effort.

47. In preparing this Final Application, Macquarie calculated the amount of time spent by each professional in performing actual and necessary advisory services for the Trustee. Time entries are kept on daily logs or on computer hard drives. These entries are compiled on a monthly basis and reviewed by Macquarie for errors.

48. The fees charged in this Final Application are the customary and usual fees which Macquarie charges clients on matters of this type. In addition, the disbursements for which Macquarie seeks reimbursement are the customary and usual expenses for which Macquarie seeks reimbursement from its clients.

49. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
>
> > (A)   the time spent on such services;
> >
> > (B)   the rates charged for such services;

1611854.04

>   (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
>   (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
>   (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

50. In the instant case, Macquarie respectfully submits that the services for which it seeks compensation in this Final Application were necessary for and beneficial to the Trustee's efforts in administrating the Debtor's estate, and necessary to and in the best interests of the Debtor's estate. Macquarie further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Trustee.

51. Many hours were spent by Macquarie professionals, often under time constraints requiring late night and weekend work, analyzing information and executing various tasks on behalf of the Trustee, including analyzing multiple individual security characteristics and structures, as well as preparing for and executing the securities sale process.

52. The fees charged by Macquarie in this case are its standard fees for bankruptcy matters, and are similar to the fees it would charge throughout the country in any bankruptcy case of this size and prominence. The fees charged by Macquarie also are consistent with reasonable and customary fees charged throughout the country in matters of similar complexity, scope and national significance.

53. In sum, the services rendered by Macquarie were necessary and beneficial to the Debtor's estate, and were consistently performed in a timely manner commensurate with the

14

1611854.04

complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation sought herein is warranted.

### Conclusion

WHEREFORE, Macquarie respectfully requests: (i) allowance and payment of compensation for professional services rendered during the Final Compensation Period in the amount of $2,349,850; (ii) reimbursement for actual and necessary expenses Macquarie incurred during the Final Compensation Period in the amount of $578; and (iii) that the Court grant Macquarie such other and further relief as is just.

Dated: Chicago, Illinois  
January 23, 2009

Macquarie Capital (USA) Inc.

_/s/ Ford R. Phillips_  
**Ford R. Phillips**  
Managing Director

233 South Wacker Drive  
Chicago, IL 60606  
Tel: (312) 756-3800  
Fax: (312) 756-3810

15

1611854.04