# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 07 B 14987 |
| | ) | Chapter 11 |
| SENTINEL   MANAGEMENT   GROUP, | ) | Judge John H. Squires |
| INC., | ) | |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion for allowance and payment of fees by an unofficial ad hoc committee of a specific class of creditors, the SEG 1 customers (the "Ad Hoc Committee")[1] pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). Frederick J. Grede, the Liquidating Trustee (the "Trustee") and estate representative for the estate (the "Estate") of Sentinel Management Group, Inc. ("Sentinel"), objects to the Ad Hoc Committee's motion. For the reasons set forth herein, the Court sustains the Trustee's objection and denies the Ad Hoc Committee's motion in its entirety. The Ad Hoc Committee failed to prove that it provided a substantial contribution in this case.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern

---

[1] The members of the Ad Hoc Committee are as follows: FC Stone, LLC, Frontier Futures, Inc., Fortis Clearing Americas, LLC, Country Hedging, Inc., Alaron Trading Corporation, Cadent Financial Services, LLC, Rand Financial Services, Inc., Velocity Futures LP, Crossland Customer Segregated, and Peregrine Financial Group, Inc.

-2-

District of Illinois. The matter of whether the Ad Hoc Committee provided a substantial contribution in this case is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II. BACKGROUND

On August 17, 2007, Sentinel filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Docket No. 1.) On August 29, 2007, the Court appointed Frederick J. Grede as the Chapter 11 trustee for Sentinel's estate under 11 U.S.C. § 1104. (Docket No. 105.) On September 6, 2007, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Official Committee") pursuant to 11 U.S.C. § 1102(a)(1). (Docket No. 156.) At the time of the appointment, the Official Committee consisted of BC Capital Fund A, LLC, Discus Master Ltd., JEM Commodity Relative Value Fund LP, Jump Trading, LLC, and Rotchford Barker (who were primarily SEG 3 creditors), and Kottke Associates LLC, Penson GHCO, Vision Financial Markets LLC, and FC Stone, LLC (who were primarily SEG 1 customers). *Id.*; Disclosure Statement at p. 16 (Docket No. 592.) Thereafter, the Ad Hoc Committee formed and FC Stone, LLC resigned from the Official Committee. *See* Rule 2019 Verified Statement of Attorney (the "Rule 2019 Statement") (Docket No. 192); Amended Notice of Appointment of Committee of Unsecured Creditors (Docket No. 495.) At the time of the filing of the Rule 2019 Statement, the Ad Hoc Committee's counsel listed the following parties in interest as a part of their multiple representation in this case: FC Stone, LLC, Rand Financial Services, Inc.,

-3-

Frontier Futures, Inc., Alaron Trading Corporation, Alaron FX, Inc., Alaron Holdings Corporation, and Alaron Clearing, LLC.[2]

On May 13, 2008, the Official Committee and the Trustee (collectively, the "Plan Proponents") filed a joint disclosure statement and an accompanying plan of liquidation. (Docket No. 501.) The Ad Hoc Committee objected to the disclosure statement. (Docket No. 531.) Their objection argued, among other things, that the plan violated 11 U.S.C. § 541, Federal Rule of Bankruptcy Procedure 7001, and principles of due process because it attempted to treat the purported property of the SEG 1 customers as property of Sentinel's Estate without a ruling in an adversary proceeding on this issue.

The Court conducted a hearing on the Ad Hoc Committee's objection to the disclosure statement on June 16, 2008. After the hearing, the Plan Proponents filed an amended disclosure statement (the "Amended Disclosure Statement") along with an amended plan of liquidation (the "Amended Plan") on June 18, 2008. The Court entered an order approving the Amended Disclosure Statement the following day. Thereafter, in July 2008, the Ad Hoc Committee served discovery on the Trustee and certain other customers

---

[2] The Court recognizes that the Ad Hoc Committee's counsel submitted the Rule 2019 Statement early in this case. The Court does not pass judgment on whether submitting a Rule 2019 Statement was a required or necessary action by counsel to the Ad Hoc Committee. *See* Evan D. Flaschen & Kurt A. Mayr, *Ad Hoc Committees and the Misuse of Bankruptcy Rule 2019*, 16 J. BANKR. L. & PRAC. 6, Art. 3 (Dec. 2007); *see also In re Northwest Airlines Corp.*, 363 B.R. 701 (Bankr. S.D.N.Y. 2007). However, the Court notes that the Ad Hoc Committee's counsel failed to update or revise the Rule 2019 Statement during the pendency of this case. Even though the Ad Hoc Committee contains many of the entities listed in the Rule 2019 Statement, some of the members of the Ad Hoc Committee are not disclosed in the Rule 2019 Statement. Counsel's failure to amend or supplement its previous filing could have adversely affected the amount of fees and expenses eligible for administrative priority if the Court determined that the Ad Hoc Committee provided a substantial contribution to Sentinel, its creditors, or the Estate.

-4-

of Sentinel related to the Amended Plan. The Ad Hoc Committee also defended numerous depositions that the Trustee conducted on officers of the Ad Hoc Committee.

On August 1, 2008, the Ad Hoc Committee filed an objection to the Amended Plan (Docket No. 903), and the Court held a hearing on confirmation of the Amended Plan on August 12 and 13, 2008. At the confirmation hearing, the Ad Hoc Committee presented arguments in opposition to the Plan Proponents and cross-examined the Trustee. On December 8, 2008, the Court issued a Memorandum Opinion confirming the Amended Plan with one modification. *In re Sentinel Mgmt. Group, Inc.*, 398 B.R. 281 (Bankr. N.D. Ill. 2008). The modification of the Amended Plan was a minor revision with respect to when the Trustee could charge interest against certain SEG 1 customers with regard to the August 2007 Transfers, defined *infra*.

By way of its motion, the Ad Hoc Committee seeks administrative expense payment for a portion of its legal fees pursuant to §§ 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code. The portion of the fees that the Ad Hoc Committee seeks reimbursement does not include all of the Ad Hoc Committee's efforts in this case. Rather, the motion seeks administrative expense reimbursement for the fees of counsel to the Ad Hoc Committee regarding: (1) review of the Disclosure Statement; (2) discovery requests regarding the Amended Plan; and (3) review of the Amended Plan and drafting their objection thereto.

-5-

## III. DISCUSSION

Section 503(b) of the Bankruptcy Code authorizes the bankruptcy court to award compensation to creditors for their legal and other expenses incurred in making a "substantial contribution" in a case. The section, in pertinent part, provides as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
>
> . . .
>
>> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–
>>
>> . . .
>>
>>> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title[.]
>>
>> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. §§ 503(b)(3)(D) & (b)(4).

-6-

The policy aim behind these provisions of § 503(b) is to promote meaningful creditor participation in the reorganization process. *See generally In re Jartran, Inc.*, 732 F.2d 584, 586-87 (7th Cir. 1984). However, tension exists between this aim and the contrasting policy that administrative expenses should be kept to a minimum. *In re United States Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989), *aff'd,* Nos. 90 CIV 3823 (MGC), 90 CIV 4491 (MGC), 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991). As a result, bankruptcy courts narrowly construe the availability of the remedy afforded by §§ 503(b)(3) and (b)(4). *In re Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. 291, 294 (Bankr. E.D. Pa. 1996); *In re Stoecker*, 128 B.R. 205, 208 (Bankr. N.D. Ill. 1991).

Subsections 503(b)(3) and (b)(4) provide a statutory mechanism for awarding administrative expenses to informal or unofficial committees, such as the Ad Hoc Committee, and bankruptcy courts have wide discretion to determine the amount of expenses to award under § 503, if any. *Haskins v. United States (In re Lister)*, 846 F.2d 55, 56 (10th Cir. 1988) *(citing In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir. 1986)). Generally, whether to allow administrative expenses under § 503(b)(3)(D) is a question of fact left to the bankruptcy court's discretion. *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 946 (3d Cir. 1994) (a determination of whether or not a substantial contribution to a reorganization has been made is a question of fact). In this regard, the burden of proof is on the applicant to demonstrate by a preponderance of the evidence that it has made a substantial contribution in the case. *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008); *Cargill Fin. Servs. Corp. v. Envirodyne Indus., Inc.*, No. 94 C 6950, 1995 WL

-7-

461854, at *3 (N.D. Ill. July 12, 1995) (*citing In re Sinclair*, 92 B.R. 787, 788 (Bankr. S.D. Ill. 1988)); *Stoecker*, 128 B.R. at 208.

The central issue before the Court is whether the Ad Hoc Committee's efforts in this case amounted to a substantial contribution to Sentinel, the Estate, or its creditors. The term "substantial contribution" is not defined in the Code. Generally, substantial contribution is narrowly defined given "[t]he integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate." *In re D.W.G.K. Rests., Inc.*, 84 B.R. 684, 690 (Bankr. S.D. Cal. 1988). Courts have found that an applicant satisfies the test for providing a substantial contribution when it has provided "an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders." *United States Lines*, 103 B.R. at 429.

"Inherent in the term 'substantial' is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Lebron*, 27 F.3d at 944. In this regard, "[c]reditors face an especially difficult burden in passing the 'substantial contribution' test [because] they are presumed to act primarily in their own interests." *United States Lines*, 103 B.R at 430. As Judge Holderman noted, when determining whether an entity is entitled to administrative expense priority under these sections, "courts consider whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate; services that indirectly, incidentally, or tangentially benefit the estate do not qualify for administrative expense priority." *Envirodyne Indus.*, 1995 WL 461854, at *3.

-8-

## A.    Substantial Contribution

The Ad Hoc Committee argues that the Estate in general, and not the Ad Hoc Committee alone, benefitted from their advocacy in regards to several different issues that arose during the confirmation process. Based on the following analysis, the results of the Ad Hoc Committee's efforts in this case do not amount to the extraordinary and have failed to provide a direct, significant, or tangible benefit to Sentinel, the Estate, or its other creditors. *See D.W.G.K. Rests.,* 84 B.R. at 690. To the extent that a benefit to the Estate can be gleaned from the Court's action in sustaining or agreeing with certain Ad Hoc Committee objections, the Court finds the Ad Hoc Committee has not met its burden to demonstrate that it was not the primary beneficiary of its advocacy in this case. *See United States Lines,* 103 B.R. at 430. As a result, the Ad Hoc Committee failed to meet its burden of proof with regard to its motion. The Court will now address each issue raised by the Ad Hoc Committee.

### 1.    The Property of the Estate Issue and the Reserves

Prior to the petition date, Sentinel entered into an agreement with Citadel Equity Fund, Ltd. and Citadel Limited Partnership (collectively, "Citadel") whereby Sentinel agreed to sell, assign, and transfer to Citadel certain securities held for the benefit of SEG 1 customers (the "Citadel Sale") for approximately $320.5 million (the "Citadel Proceeds"). *Sentinel Mgmt. Group,* 398 B.R. at 290. On the petition date, Sentinel transferred $22,524,942 in cash to certain SEG 1 customers from a SEG 1 account at Sentinel (the "August 17 Transfers"). *Id.* Shortly thereafter, on August 21, 2007, Sentinel transferred roughly $297 million of the Citadel Proceeds to certain SEG 1 customers (the "August 21 Transfers") (the August 17 Transfers and August 21 Transfers, collectively referred to as the

-9-

"August 2007 Transfers"). *Id.* After the Trustee was appointed, a major issue arose concerning the August 2007 Transfers. The Trustee asserted the August 2007 Transfers were recoverable from the SEG 1 customers that received the transfers because such funds were property of Sentinel's Estate pursuant to 11 U.S.C. § 541 (the "Property of the Estate Issue"). In contrast, the Ad Hoc Committee argued that such funds were not within the scope of § 541.

In order to resolve the Property of the Estate Issue, the Plan Proponents originally contemplated a trial on the issue in conjunction with the confirmation hearing. At the first hearing concerning the adequacy of the disclosure statement, the Court determined that the Property of the Estate Issue should be resolved separate from the confirmation process. *See* June 16, 2008 Transcript of Proceedings. As a result, the Trustee filed adversary proceedings against the majority of the Ad Hoc Committee members, and others, that received the August 2007 Transfers. The parties also set up a reserve in the Amended Plan pending resolution of the Property of the Estate Issue (the "Property of the Estate Reserve").

The Court notes that the Ad Hoc Committee continued to raise the Property of the Estate Issue in its briefing up through plan confirmation. *See* Objections of the Ad Hoc Committee of SEG 1 Customers to Confirmation of Amended Chapter 11 Plan of Liquidation (Docket No. 903.) However, such objection and the arguments in support thereof do not rise above the high water mark set forth in the substantial contribution test. There is nothing substantial or extraordinary about the Ad Hoc Committee's efforts in regard to this objection to the Amended Plan. The Ad Hoc Committee has failed to demonstrate how their efforts have resulted in something more than an indirect, incidental, or tangential

-10-

benefit to the Estate. The original plan proposed by the Plan Proponents did not suggest a resolution of the Property of the Estate Issue. Rather, the Plan Proponents proposed a course of action for the Court to take in order to dispose of the issue in a more cost-effective manner. The Ad Hoc Committee correctly stated that the course of action proposed by the Plan Proponents violated Bankruptcy Rule 7001 as the Property of the Estate Issue is required to be resolved in an adversary proceeding.

The Court, however, is not persuaded that the Ad Hoc Committee's efforts in this regard should result in administrative expense priority. Simply, the issue regarding whether to hold a trial in connection with the confirmation hearing was disposed of by the Court in short order on June 16, 2008, which was well before the confirmation hearing in this case. Based on the Court's conclusion that the Ad Hoc Committee's efforts with regard to the Property of the Estate Issue do not rise to the level required by the substantial contribution test, the result of creating the Property of the Estate Reserve also did not overcome the high burden placed on the Ad Hoc Committee.

The Ad Hoc Committee also has not overcome its burden of proving it provided a substantial contribution regarding another reserve in the Amended Plan. After an objection by the Ad Hoc Committee, the parties agreed to create a reserve in the Amended Plan for a certain class of claims (SEG 3 claims) held by the SEG 1 customers (the "SEG 3 Reserve"). The Ad Hoc Committee asserts that "the Trustee agreed to create such a reserve, preserving millions for potential distribution to SEG 1 [c]ustomers on account of their SEG 3 [c]laims." Ad Hoc Committee Motion, p. 16. The Trustee's act of agreement is simply the result of ongoing negotiation. The act of negotiating a point in a plan, does not provide a substantial

-11-

contribution to the estate. "[N]egotiating is an expected and routine activity in Chapter 11

cases, and absent some spectacular result, such as dramatically improving treatment of all

creditors, expected and routine activities do not constitute substantial contribution[.]" *In re*

*Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005) (footnote omitted).

Additionally, even if the Court found that the creation of either the Property of the

Estate Reserve or the SEG 3 Reserve (collectively the "Reserves") amounted to an

extraordinary act, the Ad Hoc Committee has not demonstrated or overcome its burden to

show that its members were not the primary beneficiaries of the Reserves. *See Lebron*, 27

F.3d at 944; *Unites States Lines*, 103 B.R. at 430. The Ad Hoc Committee has not presented

any argument that would overcome the conclusion that the Reserves primarily benefitted the

SEG 1 customers that did not vote in favor of the Amended Plan (and the settlement

agreement regarding the August 2007 Transfers embedded therein), namely, the members

of the Ad Hoc Committee. *See, e.g., In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34

(Bankr. D.N.J. 1996) (finding actual, demonstrable benefit to the estate when the creditor's

activities resulted in a confirmed plan that paid all approved claims in full on the initial

distribution date (and some with interest), but ultimately denying the creditor's substantial

contribution application because the creditor was acting primarily in its own interest).

### 2.    Claim Calculation

The Ad Hoc Committee asserts that it provided a substantial contribution with regard

to the method by which the Amended Plan calculates the claims of SEG 1 customers. The

Plan Proponents proposed a mathematical formula to calculate the SEG 1 claims and the Ad

Hoc Committee objected. After negotiating this point with the Plan Proponents, the plan was

-12-

modified to support the SEG 1 customers' arguments. The modification resulted in a revision to the definition of "percentage recovery" under the Amended Plan. This change modified a "catch up" provision in the Amended Plan. The "catch up" provision now ends when a certain class of creditors (the SEG 3 customers) receive distributions from the Estate equal to 69.5%, rather than 71.1% of their pre-petition claims.

Simply put, this was a negotiation between the Plan Proponents and the Ad Hoc Committee. The Ad Hoc Committee argues that this was not a "plan negotiation." Rather, this revision was the result of advocacy by the Ad Hoc Committee that compelled an amendment to the plan. As noted previously, negotiation, even when hard fought by the parties involved, is an expected and routine activity and does not amount to substantial contribution. *Am. Plumbing,* 327 B.R. at 291. Additionally, the results of this negotiated point have yet to be seen. While the Ad Hoc Committee has asserted that such a change in calculation could potentially result in a multi-million dollar benefit to SEG 1 customers, it is unclear how the Estate and other creditors would benefit from this change to the Amended Plan. Abstract, unrealized gains or theoretical revisions to a plan which have not resulted in an actual or demonstrable benefit to the debtor or its creditors do not amount to providing a substantial contribution. Even if such actions provided an extraordinary benefit to the Estate, the Ad Hoc Committee has not overcome the burden that it was not the primary beneficiary of its actions. *See United States Lines,* 103 B.R. at 430. Simply, the Ad Hoc Committee failed to demonstrate how Sentinel, its other creditors, or the Estate would benefit from this revision in the Amended Plan.

-13-

### 3.    Objections to Lack of Information in the Disclosure Statement

The Ad Hoc Committee raised significant objections related to the disclosure

statement. The Ad Hoc Committee claims that those objections led to more information

being available in the Amended Disclosure Statement to all customers and creditors of

Sentinel. Specifically, the Ad Hoc Committee provides that its efforts increased the amount

of information related to: (1) the position of the SEG 1 customers on the Property of the

Estate Issue; (2) the dispute over whether Sentinel would qualify as a stockbroker under

subchapter III of Chapter 7 of the Bankruptcy Code; and (3) the Amended Plan's distinction

between "Customer Property" and "Excess Cash" and its impact on distributions to creditor

classes. These objections resulted in minor modifications, if that, to the Amended Disclosure

Statement. Objections to the disclosure statement which result in nothing more than minor

revisions to the description of certain aspects of the disclosure statement do not amount to

providing a substantial contribution. *In re Granite Partners, L.P.*, 213 B.R. 440, 449 (Bankr.

S.D.N.Y. 1997) ("Here, the applicants' objections to the disclosure statement did not alter

the character of the document, and did not, therefore, rise to the level of a substantial

contribution."). The efforts suggested by the Ad Hoc Committee provided no meaningful

or material impact on confirmation of the Amended Plan. As such, the Court finds the Ad

Hoc Committee's efforts with regard to the objections to the disclosure statement did not

provide a substantial contribution to Sentinel, the Estate, or its creditors.

### 4.    Imputed Interest Objection

Finally, the Ad Hoc Committee seeks administrative expense reimbursement for their

efforts regarding the interest charged against them by the Trustee for the Citadel Proceeds

-14-

received in August 2007. The Amended Plan proposed to charge interest against the SEG
1 customers that received the Citadel Proceeds (the "Citadel Beneficiaries") from the date
the Citadel Beneficiaries received the proceeds from Sentinel. The Ad Hoc Committee
disputed this provision of the Amended Plan. The Ad Hoc Committee argued that the
Trustee could only charge interest from the date in which he filed suit to recover the
distributions from the Citadel Beneficiaries. The Trustee filed such lawsuits in September
2008. The Court agreed with the Ad Hoc Committee's argument and analysis on this point
and required the Plan Proponents to modify the Amended Plan for confirmation. *Sentinel
Mgmt. Group*, 398 B.R. at 292-95.

Although agreeing with the Ad Hoc Committee's perspective, the Court does not
believe that the Ad Hoc Committee's efforts concerning this narrow issue rise to the level
of providing a substantial contribution to Sentinel, the Estate, or its other creditors. This was
one argument in a series of objections to the Amended Plan that did not amount to an
extraordinary action by the Ad Hoc Committee. As such, neither Sentinel nor its creditors
will see any sizeable benefit as a result of the ordered modification to the Amended Plan.

Additionally, the lawsuits filed by the Trustee against the Citadel Beneficiaries to
recover the August 2007 Transfers are still pending. Should the Trustee fail in his efforts to
recover the August 2007 Transfers, this modification to the Amended Plan will be rendered
meaningless. Should the Trustee succeed in his litigation against the Citadel Beneficiaries,
it still remains unclear how much of a benefit or savings the Citadel Beneficiaries will
receive in this case. The Ad Hoc Committee admits this much in its motion. The
"arguments on imputed interest could save SEG 1 [c]ustomers approximately $12 million

-15-

depending on the ultimate distributions made in this case." Ad Hoc Committee Motion, p. 10 (emphasis in original).[3]  A potential, uncertain savings does not amount to providing a demonstrable, extraordinary benefit to Sentinel, the Estate, or its creditors.  Further, to the extent the Trustee is successful in this ongoing litigation and can recover the interest on such distributions, the Citadel Beneficiaries, many of which are also members of the Ad Hoc Committee, will be the primary parties that receive the benefit of this modification to the Amended Plan.  Thus, the Court finds that the Ad Hoc Committee has failed to meet its burden to demonstrate that Sentinel, or in this case, its other creditors, would be the primary beneficiaries of the Ad Hoc Committee's efforts concerning the interest that may be recoverable should the Trustee be successful.

### B.    Review of the Fees Submitted by the Ad Hoc Committee

Generally, analysis of applications for fees under a theory of substantial contribution involves a two-step process.  *See In re Summit Metals, Inc.*, 379 B.R. 40 (Bankr. D. Del. 2007).  First, the court evaluates whether the applicant's efforts pass the substantial contribution test.  *Id.* at 54.  Next, the court reviews whether the fees and expenses of the applicant were actual and necessary.  *Id.*  Because the Court has determined that the Ad Hoc Committee has not made a substantial contribution to Sentinel, its creditors, or the Estate, the Court does not have to entertain a substantive review of the fees at this time.

---

[3]  Given the size and complexity of this case, the Ad Hoc Committee has failed to demonstrate whether a $12 million savings to SEG 1 customers is in fact substantial. Sentinel administered approximately $2 billion in assets pre-petition.  While saving millions of dollars may in fact be substantial, the Ad Hoc Committee failed to demonstrate whether the $12 million is a substantial or extraordinary amount given the significant amount of funds at stake in this case.

-16-

The Court notes, however, that bankruptcy courts have wide discretion to determine reasonable compensation for actual and necessary services. *In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987). Additionally, the burden to prove that the requested costs and fees were actual and necessary rests with the applicant. *Id.* at 708. In this regard, the Court notes that in determining whether the Ad Hoc Committee made a substantial contribution, the Court may review the actions included in their motion. *See, e.g., In re Baldwin-United Corp.*, 79 B.R. 321, 339 (Bankr. S.D. Ohio 1987). In addition, the Court may also consider the Ad Hoc Committee's actions which are outside the scope of their administrative expense request. *See id.*

The bankruptcy court in *Baldwin-United Corp.*, reviewed an indenture trustee's application for compensation. The trustee represented the collective interests of debenture holders and generally led the fight against the debtors' efforts to reorganize. The court noted that the trustee "embarked upon a campaign to fight its way out of these cases, and to do so as quickly as possible regardless of the consequences to the Debtors or their reorganization efforts." *Id.* Such actions cost the debtors hundreds of thousands of dollars in fees and expenses, even though such actions were not included in the trustee's administrative expense application.

Similar to the indenture trustee in *Baldwin-United Corp.*, the Ad Hoc Committee submitted an application for compensation via its motion, which included only a portion of its efforts in this case. Had the Court found the Ad Hoc Committee's motion included efforts that provided a substantial contribution to Sentinel, such fees would have been denied in the face of the expenses the Ad Hoc Committee caused the Plan Proponents to incur as they

-17-

attempted to confirm the Amended Plan in this case. Simply put, while the Ad Hoc

Committee's counsel may have generally benefitted the Ad Hoc Committee, they certainly

did not "foster and enhance, rather than retard and interrupt, the progress" of the Plan

Proponents' efforts or the plan confirmation process. *Id.* (*quoting In re Richton Int'l. Corp.*,

15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981)).

### IV. CONCLUSION

For the foregoing reasons, the Court denies the Ad Hoc Committee's motion.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____5/5/9_____     _____
                                                        John H. Squires
                                           United States Bankruptcy Judge

cc:     See attached Service List

## SERVICE LIST
### In re Sentinel Management Group, Inc.
### Case No. 07-14987

Frederick J. Grede
Liquidation Trustee
c/o Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611

Ronald Barliant, Esq.
Kathryn A. Pamenter, Esq.
Randall Klein, Esq.
Goldberg Kohn
55 E. Monroe Street
Suite 3300
Chicago, IL 60603-5792
(Attorneys for Sentinel Management Group, Inc.)

William T. Neary, U.S. Trustee
Roman Sukley, Esq.
Gretchen Silver, Esq.
United States Trustee
Dirksen Federal Courthouse
219 S. Dearborn Street, Room 873
Chicago, IL 60604

Angela D. Dodd, Esq.
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604

Catherine L. Steege, Esq.
Vincent E. Lazar, Esq.
Christine L. Childers, Esq.
Jenner & Block LLP
330 N.Wabash Avenue
Chicago, IL 60611

Thomas W. Sexton, Esq.
General Counsel
National Futures Association
300 S. Riverside Dr., Suite 1800
Chicago, IL 60606

Mark A. Berkoff, Esq.
Marc I. Fenton, Esq.
Neal Gerber & Eisenberg LLP
Two N. LaSalle Street, Suite 1700
Chicago, IL 60602
(Attorneys for Official Unsecured Creditors' Committee)

Sean T. Scott, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(Attorney for the Bank of New York)

John P. Sieger, Esq.
Andrew L. Wool, Esq.
Peter A. Siddiqui, Esq.
Christian T. Kemnitz, Esq.
Arthur W. Hahn, Esq.
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661-3693
(Attorneys for Discus Master Limited)

George G. Wilder, Esq.
Bella Rozenberg, Esq.
Bradford M. Berry, Esq.
Commodity Futures Trading Commission
1152 21st Street, N.W.
Washington, DC 20581

Robert J. Trizna, Esq.
Jeffrey David Barclay, Esq.
James J. McNamara, Esq.
David M. Giangrossi, Esq.
Schuyler Roche & Zwirner, P.C.
130 E. Randolph Street
Suite 3800
Chicago, IL 60601
(Attorneys for BC Capital Fund A, LLC, BC Capital
Fund B, LLC, Blueprint Partners LP, Dighton UTG
Fund SPC, Leviathan Diversified Fund 3XL)

David A. Genelly, Esq.
James C. Conley, Esq.
Vanasco Genelly & Miller
33 N. LaSalle Street
Suite 2200
Chicago, IL 60602
(Attorneys for Kotke Associates, LLC)

Stephen P. Bedell, Esq.
Jill L. Murch, Esq.
Thomas P. Krebs, Esq.
William J. McKenna, Esq.
Geoffrey S. Goodman, Esq.
Foley & Lardner LLP
321 North Clark Street, Ste. 2800
Chicago, IL 60610-4714
(Attorneys for Cadent Financial Services, LLC and
Fortis Clearing Americas, LLC.)(Attorneys for FC Stone
LLC, Rand Financial Services, Inc.)(Attorneys for
Velocity Futures, L.P.)(Attorneys for Alaron FX, Inc.,
Alaron Holdings Corp., Alaron Trading Corp., Frontier
Futures, Inc.)(Attorney for Crossland Customer
Segregated a/k/a Crossland LLC)

Robert M. Fishman, Esq.
Ira Bodenstein, Esq.
Shaw Gussis Fishman Glantz Wolfson &
Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60610
(Attorneys for Robb Evans & Associates LLC, as
temporary receiver of Lake Shore Asset Management,
Ltd., et al.)

Nathan F. Coco, Esq.
Paul E. Chronis, Esq.
Ryan T. Schultz, Esq.
McDermott Will & Emery LLP
227 W. Monroe Street
Chicago, IL 60606
(Attorneys for Country Hedging, Inc.)

Mark W. Page, Esq.
Kelley Drye & Warren LLP
333 W. Wacker Drive
No. 2600
Chicago, IL 60606
(Attorney for Sentinel Bank & Trust, Ltd., Sentinel U.S.
Liquidity Fund, Ltd.)

Robert B. Christie, Esq.
Henderson & Lyman
175 W. Jackson Boulevard
Suite 240
Chicago, IL 60604
(Attorneys for TradeMaven Clearing LLC)

Timothy Casey, Esq.
Michael E. Barry, Esq.
Drinker Biddle & Reath LLP
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606-1698
(Attorney for Penson GHCO)

Robert V. Shannon, Esq.
K&L Gates LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602
(Attorney for Vision Financial Market LLC, IFX)


Beckett & Lee LLP
P.O. Box 3001
Malvern, PA 19355-0701
(Attorney for American Express Bank FSB)


Jerry Hirsch
1676 Linden Avenue
Highland Park, IL 60035
(President, Stone Capital Group, Inc.)


Gennice D. Brickhouse, Esq.
Pension Benefit Guaranty Corporation
1200 K Street, NW, Suite 340
Washington, DC 20005-4026
(Attorney for PBGC)


Michael M. Eidelman, Esq.
Stephanie K. Hor, Esq.
Vedder Price Kaufman & Kammholz, P.C.
222 N. LaSalle Street
Chicago, IL 60601
(Attorney for Ernst & Young, as Receiver for Lake
Shore Alternative Financial Asset Corporation Limited
and Lake Shore Alternative Financial Asset Corporation
2006 Limited)


Bryan Krakauer, Esq.
Dennis M. Twomey, Esq.
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(Attorneys for Sentinel Creditor Group)


Richard M. Bendix, Esq.
Morgan S. Smith, Esq.
Dykema Gossett PLLC
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
(Attorneys for Stone Capital Group, Inc., Cedar Stone,
LLC, Ravinia Investors LLC, Ravinia Ivestors LLC
Profit Sharing Plan)


Lawrence B. Finer
Stanley Z. Finer
2100 N. Racine Avenue #2G
Chicago, IL 60614


Tom Stone
Stone Capital Group, Inc.
326 Cedar Avenue
Highland Park, IL 60035-4140


Brian S. Hermann, Esq.
Stephen J. Shimshak, Esq.
Moses Silverman, Esq.
Margaret A. Phillips, Esq.
Paul Weiss Rifkind Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(Attorneys for Discus Master Limited)

Susheel Kirpalani, Esq.
Joseph G. Minias, Esq.
James C. Tecce, Esq.
Benjamin Finestone, Esq.
Quinn Emanuel Urquhart Oliver & Hedges,
LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(Attorneys for Official Unsecured Creditors' Committee)

R. Scott Alsterda, Esq.
Ungaretti & Harris LLP
3500 Three First National Plaza
70 West Madison Street
Chicago, IL 60602
(Attorneys for AlphaMosaic US LLC)

Jennifer B. Herzog, Esq.
Timothy F. Nixon, Esq.
Godfrey & Kahn, S.C.
780 North Water Street
Milwaukee, WI 53202-3590
(Attorneys for Fall River Capital LLC)

Robert G. Fracasso, Esq.
Shutts & Bowen LLP
201 S. Biscayne Boulevard
1500 Miami Center
Miami, FL 33131
(Attorney for Compania de Jesus de Colombia, et. al.)

N. Neville Reid, Esq.
Sajida Mahdi Ali, Esq.
Michael W. Ott, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(Attorneys for Cantor Fitgerald & Co.)

Jeff J. Marwill, Esq.
Peter J. Young, Esq.
Proskauer Rose LLP
Three First National Plaza
70 W. Madison, Suite 3800
Chicago, IL 60602
(Attorney for Citadel Equity Fund, Ltd.)

Brian Trust, Esq.
Hector Gonzalez, Esq.
Frederick D. Hyman, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Attorney for the Bank of New York)

Howard L. Adelman, Esq.
Erich S. Buck, Esq.
Nathan Q. Rugg , Esq.
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604-3701

Stephen I. Peck, Esq.
Law Offices of Stephen Peck
105 W. Madison Street, Suite 700
Chicago, IL 60602

M. Zhiyuan Xu, Esq.
Eugene E. Geekie, Esq.
Schiff Hardin LLP
233 S. Wacker Drive
Suite 6600
Chicago, IL 60606

Joseph A. Baldi, Esq.
Joseph A. Baldi & Associates PC
19 S. LaSalle Street, Suite 1500
Chicago, IL 60603

Stephen J. Senderowitz, Esq.
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601

4